**MISSOURI PACIFIC RAILROAD COMPANY**

v.

**STAR CITY GRAVEL COMPANY, INC., and Tilmon A. Adams.**

**No. PB–76–C–8.**

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

June 13, 1978.

Robert V. Light, Friday, Eldredge & Clark, Little Rock, Ark., for plaintiff.

Alan Humphries, Reinberger, Eilbott & Smith, Pine Bluff, Ark., for defendants.

## MEMORANDUM OPINION

ROY, District Judge.

James D. West, employee of plaintiff Missouri Pacific Railroad Company, allegedly sustained injuries when plaintiff's train made an emergency stop to avoid striking a tractor-trailer rig which had stalled dangerously close to the railroad tracks. West was riding in the caboose of the train and acting within the scope of his employment at the time of the incident. The tractor-trailer rig was owned by Star City Gravel Company and driven by its employee, Tilmon A. Adams. Under authority of the Federal Employers' Liability Act, 45 U.S. C.A. § 51, et seq., employee West submitted his claim[1] for damages against his employer, Missouri Pacific (hereafter referred to either as plaintiff or Mo-Pac) who subsequently paid $80,000 in settlement. West released all claims of liability as to Mo-Pac and defendants. Thereafter, Mo-Pac initiated action against defendants Star City and Adams alleging their negligence was the proximate cause of West's injuries and sought indemnity, or in the alternative, contribution from the defendants for monies it had paid in settlement of West's claim.

Trial was before a jury which returned the following verdict upon interrogatories submitted to it:

"1.   Do you find that defendants Star City Gravel Co., Inc. and Tilmon Adams were guilty of negligence which was a proximate cause of the injuries sustained by Mr. West?

(Answer 'Yes' or 'No')   Yes

"IF YOU ANSWERED QUESTION NO. 1 'YES' THEN ANSWER THIS QUESTION:

2.   Using 100% to represent all the negligence proximately contributing to the injuries to Mr. West, in what proportion do you allocate such negligence?

| | |
|---|---|
| Star City Gravel Company, Inc. & Tilmon Adams | 5% |
| Missouri Pacific Railroad Company | 95% |
| Total . . . | 100% |

3.   Do you find that the settlement of $80,000.00 by Missouri Pacific Railroad Company with Mr. West was reasonable, prudent and in good faith?

(Answer 'Yes' or 'No')   Yes"

It was unnecessary to answer the last interrogatory since the jury found the settlement was reasonable and made in good faith.

In the judgment previously entered by this Court, the plaintiff's complaint was dismissed without any recovery. Thereafter, plaintiff filed its motion to amend the judgment wherein it prayed that it receive 5% of the settlement amount, or $4,000, from defendants Star City and Adams, jointly and severally, by way of contribution and that it further be indemnified in the amount of 95% of the settlement figure, or $76,000, from defendant Adams.

■   Contribution and indemnity are mutually exclusive remedies. The former distributes the loss among the tortfeasors by requiring each to pay his proportionate share, while indemnity shifts the entire loss from one tortfeasor who has been com-

---

1.   No complaint was filed by West against his employer, Missouri Pacific Railroad Company.

pelled to pay it to the shoulders of another who should bear it instead. Prosser, Law of Torts, §§ 50, 51 (4th ed. 1971).

The relevant section of the Arkansas Contribution Act, Ark.Stat.Ann. § 34–1002 (Repl.1962) provides:

(1) The right of contribution exists among joint tortfeasors.

(2) A joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.

\*    \*    \*    \*    \*    \*

(4) When there is such a disproportion of fault among joint tortfeasors as to render inequitable an equal distribution among them of the common liability by contribution, the relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares solely for the purpose of determining their rights of contribution among themselves, each remaining severally liable to the injured person for the whole injury as at common law.

In cases applying Arkansas law and which involve multiple tortfeasors, damages have consistently been apportioned on the basis of the defendants' relative degrees of fault, and plaintiff's monetary relief has been entered accordingly. *See Rawls v. Tansil,* 221 Ark. 699, 255 S.W.2d 973 (1953); *Wheaton Van Lines, Inc. v. Williams,* 240 Ark. 280, 399 S.W.2d 258 (1966); and *Sunday v. Burk,* 172 F.Supp. 722 (W.D.Ark. 1959). In *Burks Motors, Inc. v. International Harvester, Inc.,* 250 Ark. 29, 466 S.W.2d 907 (1971), the Arkansas Supreme Court refused to set aside the judgment entered on the jury's apportionment of responsibility between two tortfeasors of 91% as to appellee and 9% as to appellant.

■ As these cases indicate, the adoption by Arkansas of the modified version of comparative negligence, Act 296 of 1957, and now comparative fault, Ark.Stat.Ann. §§ 27–1763 *et seq.,* (Supp.1975) does not prevent a joint tortfeasor whose fault has been determined to be in the amount of 50% or more from having contribution from his fellow tortfeasor who is less negligent. Furthermore, the Arkansas Contribution Act, *supra,* provides that ". . . relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares solely for the purpose of determining their rights of contribution among themselves, . . . ." No provision of the Act provides to the contrary.

■ The jury, by interrogatory, allocated the negligence of the parties which proximately caused the injuries sustained by West as 95% attributable to plaintiff and 5% attributable to defendants Star City and Adams. The jury further found that the settlement amount of $80,000 was reasonable and entered into in good faith. Mo-Pac is therefore entitled to contribution from its co-tortfeasors Star City Gravel Company and Tilmon A. Adams, jointly and severally, in the amount of 5% of the settlement figure, or $4,000.

Plaintiff next alleges that it should be indemnified by the driver of the truck, Tilmon A. Adams, in the amount of $76,000. This amount represents the percentage of negligence allocated to Mo-Pac by the jury, or 95%, and is the remainder of the settlement figure after the contribution award is deducted. The focus of plaintiff's argument here is on the characterization of the negligence, and Mo-Pac contends that upon application of the common law principles of indemnity, the actively negligent tortfeasor should indemnify the tortfeasor who was passively negligent. The thrust of this contention is that Tilmon A. Adams, as driver of the truck, was the actively negligent party since he left the tractor-trailer rig in such close proximity to the railroad tracks that a dangerous condition was created which necessitated an emergency stop by plaintiff's train so as to avoid imminent collision. In contrast, Mo-Pac's liability is predicated upon the principle of respondeat superior and therefore it can be liable for vicarious negligence only. Since plaintiff's responsibility is derivative, Mo-Pac contends it was passively negligent and that

the law affords complete indemnity to it in this situation.

In support of this argument, Mo-Pac has cited several cases which allegedly explain the application of the common law principles of indemnity and which dictate the result now advanced by plaintiff. However, a closer reading of these authorities leads this Court to conclude that the citations are not applicable to the facts in this case.

In *Anthony v. Louisiana & A. Ry.*, 316 F.2d 858 (8th Cir. 1963), the appellate court, although affirming the disposition made by the trial court, *Louisiana & A. Ry. v. Anthony*, 199 F.Supp. 286 (W.D.Ark.1961), held that the active-passive characterization of negligence was inapplicable since a contractual indemnity situation was presented. The Spur Track Agreement construed in this case clearly granted indemnity and not contribution under the particular facts involved.

In *Fidelity & Casualty Co. of New York v. J. A. Jones Construction Co.*, 200 F.Supp. 264 (E.D.Ark.1961), the trial court's holding was that the architects, represented by appellant insurer, could maintain a cause of action for indemnity from the general contractor of the construction work. On appeal, after full trial on the issue of indemnity wherein the jury determined by interrogatories that both defendants were joint tortfeasors, which barred the indemnity claim, the trial court's dismissal of the complaint and refusal to alter the judgment was affirmed. *See* 325 F.2d 605 (8th Cir. 1963).

Indemnity was permitted in two cases cited by plaintiff in its brief. However, *Transport Insurance Co. v. Manufacturers Casualty Ins. Co.*, 226 F.Supp. 251 (E.D.Ark. 1964), affirmed *Pacific National Ins. Co. v. Transport Ins. Co.*, 341 F.2d 514 (8th Cir. 1965), involved a single tortfeasor-employee who was serving two employers. At the time of the accident, he was clearly acting outside the scope of his employment as to the employer held liable, and the appellate court affirmed the finding that this employer was entitled to indemnity from the other employer who carried the negligent employee as an omnibus insured.

Also, Mo-Pac relies on the case of *Roe v. Bryant & Johnston Co.*, 193 F.Supp. 804 (E.D.Mich.1961), but it is not controlling here because the facts are distinguishable and Michigan statutory law is involved.

■ Designation of the negligence proximately causing injuries sustained as either active or passive is only one of several categories utilized by courts in determining whether indemnity should be granted. Tests which speak of the degree of duty breached by the culpable parties and whether the parties are in "pari delicto" also have been employed. *See* Drake, *Torts—Indemnity Between Tort-Feasors*, 17 Ark.L.Rev. 204 (1963) and Prosser, *supra*, § 51, P. 313. However, no matter which test is employed the determination of whether indemnity is appropriate in a particular factual setting is achieved by deciding whether the negligent activity of only one of the multiple defendants proximately caused the injuries sustained. In all cases, liability for injury should be apportioned among those responsible in the manner which is the most equitable.

The common law principle of indemnity has been criticized because of its "all-or-nothing" application. The various tests employed in determining the indemnity issue have been criticized as generating confusion and as being artificial and archaic. At least three jurisdictions have departed from the "all-or-nothing" concept of common law indemnity in favor of a more equitable apportionment of liability among tortfeasors based on their relative degrees of fault. *See Pachowitz v. Milwaukee & Suburban Transport Corp.*, 56 Wis.2d 383, 202 N.W.2d 268 (1972); *Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (N.Y.App.1972); *American Motorcycle Ass'n v. Superior Court of Los Angeles*, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978).[2] Apparently the adoption of various

2. In an exhaustive and comprehensive opinion, the California Supreme Court in *American Mo-*

*torcycle Ass'n v. Superior Court of Los Angeles*, Cal., 146 Cal.Rptr. 182, 193–195, 578 P.2d

forms of comparative negligence in these jurisdictions has pointed the law in this direction. *See H. Woods,*[3] *Comparative Fault* 238 (1978).

In the case under consideration, the indemnity relief sought by plaintiff is clearly not appropriate. Plaintiff claimed it was entitled to relief because its obligation to its injured employee sprang from a violation of the Federal Employers Liability Act. The defendants, Star City and Adams, denied any responsibility because of their alleged negligence and contended that West's injury was caused by the negligence of his own employer, Mo-Pac and its employees. The record reflects the principal issue litigated at trial was the determination of which party engaged in negligent conduct that was the proximate cause of the injuries sustained. The jury unequivocally determined the issue of the apportionment of responsibility between the culpable parties.

■ The jury was instructed on the issue of proximate cause and the corresponding burdens of proof imposed on the parties. Pursuant to the theory of respondeat superior, the jury was further instructed that any negligence attributable to plaintiff's employees would be imputed to plaintiff. No instructions were given and none requested as to the characterization of the negligence as active or passive or as to the issues of contribution or indemnity. No objections were made to the form of the interrogatories either before or after they were given to the jury; also, no modification or additions were requested. Neither party requested further clarification of the jury's resolution of the facts in dispute. As in *Wheaton Van Lines, Inc. v. Williams, supra,* and *Burks v. International Harvester, Inc., supra,* the jury was fully apprised of the issues before it and subsequently, its factual findings were clear from the answers entered to the interrogatories. If plaintiff believed the jury should have designated the negligence of the parties as either active or passive as relevant on the issue of indemnity, plaintiff should have requested an instruction on the point as well as a suitable interrogatory. By its failure to do so, Mo-Pac waived further clarification or resolution of the issue. By the employment of the term "proximate cause" in the interrogatories, and the answers entered thereto, it is reasonable to conclude that the jury determined that both plaintiff and defendants were actively at fault.

■ Generally, ". . . a railroad company is liable for the wrongful or negligent

899, 910–912 (1978), thoroughly explored these principles in adopting what it termed the concept of "partial indemnity." The following is excerpted from that opinion:

> If the fundamental problem with the equitable indemnity doctrine as it has developed in this state were simply a matter of an unduly vague or imprecise linguistic standard, the remedy would be simply to attempt to devise a more definite verbal formulation. In our view, however, the principal difficulty with the current equitable indemnity doctrine rests not simply on a question of terminology, but lies instead in the all-or-nothing nature of the doctrine itself. Although California cases have steadfastly maintained that the doctrine is founded upon 'equitable considerations' (citations omitted) and 'is based on inherent injustice' (citation omitted), the all-or-nothing aspect of the doctrine has precluded courts from reaching a just solution in the great majority of cases in which equity and fairness call for an apportionment of loss between the wrongdoers in proportion to their relative culpability, rather than the imposition of the entire loss upon one or the other tortfeasor.

> \* \* \* \* \* \*

> In order to attain such a system, in which liability for an indivisible injury caused by concurrent tortfeasors will be borne by each individual tortfeasor 'in direct proportion to [his] respective fault,' we conclude that the current equitable indemnity rule should be modified to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis. In reaching this conclusion, we point out that in recent years a great number of courts, particularly in jurisdictions which follow the comparative negligence rule, have for similar reasons adopted, as a matter of common law, comparable rules providing for comparative contribution or comparative indemnity. (citations omitted)

3. Henry Woods, Past President of the Arkansas Bar Association, is the author of numerous Law Review articles and recognized authority in the field of comparative fault law.

acts or omissions of its agents or employees within the scope of their express or implied authority . . . ." 74 C.J.S. Railroads § 348 (1951). No contention was made at the trial that any employee of Missouri Pacific was acting other than within the scope of his duties with the railroad.

Defendants introduced proof at trial which tended to show that plaintiff failed to properly maintain its right-of-way free from obstruction, Ark.Stat.Ann. § 73–631 (Supp.1975), and that plaintiff, through its crew, failed to keep a proper lookout for persons or property situated on its tracks, Ark.Stat.Ann. § 73–1002 (Supp.1975). In support thereof, evidence was presented to the effect that a tree in full foliage obscured from view the cab of the truck preventing the crewmen riding in the engine from determining whether anyone was present in the cab and then act accordingly so as to prevent accident or injury. Additional evidence that the crewmen riding in the engine failed to warn those riding in the caboose of the impending emergency stop when they had an opportunity to do so was also developed.

The jury was fully apprised by the court's instructions as to these duties imposed on plaintiff, see Arkansas Model Jury Instructions 601 and 1802 (1974). These were factual issues submitted for the jury's determination, and breach of either duty was evidence of negligence on the part of plaintiff. From the jury's assignment of 95% negligence to Mo-Pac, plaintiff's liability was apparently predicated on something more than its failure to provide its injured employee with a safe place to work as required under F.E.L.A. *See, e. g., Waylander-Peterson Co. v. Great No. Ry. Co.,* 201 F.2d 408 (8th Cir. 1953).

Accordingly, plaintiff's motion for indemnity from defendant Adams is denied.