MOSLEY MACHINERY CO., INC. *v.* GRAY SUPPLY CO., et al.

91-306                                         833 S.W.2d 772

Supreme Court of Arkansas
Opinion delivered July 13, 1992

*Anderson & Kilpatrick*, by: *Randy P. Murphy*, for appellant.

*Laser, Sharp, Mayes, Wilson, Bufford & Watts, P.A.*, by: *Richard N. Watts*; and *Huckaby, Munson, Rowlett & Tilley, P.A.*, by: *Beverly Rowlett*, for appellee.

ROBERT H. DUDLEY, Justice. This case involves the exclusivity of the Workers' Compensation Act. Gray Supply Company, the employer and the appellee, bought a metal shearing machine from Mosley Machinery Company, Inc., the manufacturer of the machine and the appellant. Seven years later, two employees were making repairs inside the machine when an accident occurred that killed one employee and injured the other. The employer-appellee paid Workers' Compensation benefits to the injured employee and to the decedent's survivors. The injured

employee and the decedent's estate sued Mosley, the manufacturer of the machine, for negligence in design, strict liability for providing a defective product, and failing to provide an adequate warning. The manufacturer filed a third-party complaint against the employer for indemnity implied in the purchase contract. In its third-party complaint the manufacturer alleged that the employer violated Occupational Safety and Health Administration regulations and failed to perform repairs on the machine in compliance with instructions provided by the manufacturer. The employer filed a motion to dismiss for failure to state facts upon which relief could be granted because the exclusive remedy against an employer is the payment of Workers' Compensation benefits. Ark. Code Ann. § 11-9-105 (1987). The trial court granted the employer's motion and entered the appropriate order under A.R.C.P. Rule 54(b) allowing the manufacturer to appeal on the separate issue of the employer's liability for indemnity. We affirm the trial court's ruling dismissing the manufacturer's third-party complaint.

■ The manufacturer argues that, under the terms of its sales contract with the employer, there should be implied a duty on the employer to supervise and conduct all work on the machine in such a manner as to insure the safety of its employees and a promise to indemnify the manufacturer for any damages resulting from the breach of this duty. We have recognized an exception to the exclusivity of the Workers' Compensation remedy when there is a contract or special relation capable of carrying with it an implied obligation to indemnify. *Smith* v. *Paragould Light & Water Comm'n*, 303 Ark. 109, 793 S.W.2d 341 (1990) and *Oaklawn Jockey Club* v. *Pickens-Bond Constr. Co.*, 251 Ark. 1100, 477 S.W.2d 477 (1972).

■ In *Oaklawn*, we recognized implied indemnity in a construction contract between the employer and the third party landowner. Professor Larson has explained that such a contract is one in which can be found a separate duty running from the employer to the third party.

> When the employer's relation to the third party is that of a contractor doing work for the third party, there may be an implied obligation to perform the work with due care. If, by failing to use such care, the employer causes an accident

injuring his own employee, it may be said that the employer has simultaneously breached two duties of care. The one is toward the employee, and it is for this breach that compensation bars any common-law remedy. The other is toward the third party contractee, and among the damages flowing from the breach of this separate duty are any damages the third party may be forced to pay the employee because of their relation.

2B A. Larson, The Law of Workmen's Compensation § 76.60 (1989).

■ However, the contract in the present case is not a contract for services but a fully executed sales contract. In such a contract, the implied duties or warranties do not run from the purchaser (employer) to the manufacturer, but from the manufacturer to the purchaser. *McClish* v. *Niagara Machine & Tool Works*, 266 F. Supp. 987 (S.D. Ind. 1967); *Arcell* v. *Ashland Chemical Co., Inc.*, 378 A.2d 53 (N.J. 1977); *Williams et al.* v. *Ashland Chemical Co.*, 368 N.E. 2d 304 (Ohio 1976); 2B A. Larson, the Law of Workmen's Compensation § 76.84 (1989). To find that when a purchaser buys a product, he makes an implied contract with the manufacturer to use that product in such a way as not to bring liability upon the manufacturer "would be stretching the concept of contract out of all relation to reality." 2B A. Larson, *supra*, at 14-871.

■ Since we cannot find any implied duty running from the employer-purchaser to the manufacturer-seller in a sales contract, the promise to indemnify, if any, must be found in the express provisions of the contract. In its third party complaint and on appeal, the manufacturer relies upon the following paragraphs from its purchase contract with Gray:

20. SAFETY. PURCHASER acknowledges being informed by COMPANY that in order to avoid personal injury and property damage, care in the operation and maintenance of the EQUIPMENT is essential. In furtherance of this objective, COMPANY shall supply PURCHASER with COMPANY'S operating and maintenance manual and safety procedures for the EQUIPMENT, and PURCHASER (i) agrees and obligates itself to read same prior to any use of EQUIPMENT,

and examine all warnings, signs and designations affixed to or painted on the EQUIPMENT, all of which is hereinafter referred to as the "safety materials", (ii) agrees and obligates itself to instruct its servants, agents and employees and any other users of the EQUIPMENT in the knowledge of such safety materials; (iii) agrees and obligates itself, and to cause its servants, agents and employees and any other users of the EQUIPMENT, to obey and abide by such safety materials; and (iv) agrees and obligates itself to make such materials available to, disseminate among and cause to be understood by all independent contractors, licensees, invitees and any other third party coming into contact with the EQUIPMENT.

21. OCCUPATIONAL SAFETY AND HEALTH ACT ("OSHA"). OSHA and the standards thereof control usage of the EQUIPMENT in the facilities of the PURCHASER and compliance therewith is its responsibility as an employer. COMPANY endeavors to comply with all purposes and applicable standards of OSHA but the purchase price thereof does not include such special charges as may be necessary to insure strict OSHA compliance. In the event the EQUIPMENT herein is not found to comply with OSHA, COMPANY, at PURCHASER'S request and expense, will endeavor to make appropriate modification.

These paragraphs acknowledge the employer's duty to maintain and operate the machine in a safe manner and to comply with OSHA regulations. However, the mere acknowledgement of such obligations does not express an agreement of indemnity running to the manufacturer. To imply that this creates duties of indemnity running to the manufacturer, "turns indemnity on its head." *Santisteven* v. *Dow Chemical Co.*, 506 F.2d 1216, 1219 (7th Cir. 1974).

■■ In the absence of an express contract for indemnity, it is an equitable remedy, governed by equitable principles which shift responsibility for the loss from one tortfeasor who might be compelled to pay to the shoulders of another who should bear it instead. *Missouri Pac. R.R. Co.* v. *Star City Gravel Co.*, 452 F. Supp. 480 (E.D. Ark. 1978); W. P. Keeton et al., Prosser and

Keeton on The Law of Torts § 51 (5th ed. 1984). The manufacturer argues that it is equitable to shift the loss to the employer because the employer was in control of the machine and responsible for the supervision of its employees at the time the accident occurred. These were important considerations in the *Oaklawn* and *Smith* cases upon which the manufacturer relies. However, in those cases, it was not these considerations alone which made it equitable to shift the burden for the loss to the employer. As discussed above, the *Oaklawn* case involved a contract for services, and under the case law, such a contract implies a duty running from the employer-contractor to the contractee to perform the work with care and to indemnify for damages flowing from the breach of that obligation. In *Smith*, the provisions of a statute obligated the city employer to supervise the work and from this separate obligation could be implied the promise to indemnify others who might be held liable for its failure to properly discharge this duty. In the present case, there is no special relationship carrying with it an implied obligation to indemnify. Therefore, the trial court did not err in dismissing Mosley's third party claim for indemnity from Gray, the employer, and this result is consistent with our prior cases. See also *Morgan Constr. Co. v. Larkan*, 254 Ark. 838, 841, 496 S.W.2d 431, 433 (1973), in which we embraced the general rule that, "[w]hen the relation between the parties involves no contract or special relation capable of carrying with it an implied obligation to indemnify, the basic exclusiveness rule generally cannot be defeated by dressing the remedy itself in contractual clothes, such as indemnity . . . ."

Affirmed.

CORBIN, J., not participating.