Howard CHERRY *v.* TANDA, INC., and Transcontinental Insurance Co.

96-1229                                                940 S.W.2d 457

Supreme Court of Arkansas
Opinion delivered March 17, 1997

---

*R. Theodore Stricker*, for appellant.

*Jones, Jackson & Moll, PLC*, by: *J. Scott Hardin*, for appellees.

ANNABELLE CLINTON IMBER, Justice. Howard Cherry, as administrator of David H. Cherry's estate, appeals the dismissal of his wrongful death action against the decedent's former employer,

Tanda, Inc., and the employer's insurance carrier, Transcontinental Insurance Co. We affirm.

On June 22, 1993, the City of Fort Smith ("City") entered into a contract with Tanda, Inc. ("Tanda"), for the construction of a sanitary landfill. As part of the contract, Tanda agreed to indemnify the City for all claims and damages for injuries or deaths arising out of the performance of the contract. In addition, Tanda agreed to carry general liability insurance which it subsequently obtained from Transcontinental Insurance Company ("Transcontinental").

On September 13, 1993, the walls of the excavation site collapsed causing the death of David H. Cherry. On November 30, 1996, Howard Cherry, as administrator of David Cherry's estate, filed in the Sebastian County Circuit Court a wrongful death action against Tanda and Transcontinental.

Tanda filed a Rule 12(b)(6) motion to dismiss in which it alleged that the exclusive-remedy provision of the Workers' Compensation Act, Ark. Code Ann. § 11-9-105 (Supp. 1995), immunized Tanda from Cherry's tort action. Likewise, Transcontinental filed a motion for summary judgment in which it claimed that Tanda, not the City of Fort Smith, was the insured, and thus the estate could not maintain a direct action against the insurance carrier pursuant to Ark. Code Ann. § 23-79-210 (Repl. 1992). The trial court granted both motions and Cherry appeals.

I. *Immunity of Employer From Suit Under the Exclusive Remedy Provision of Ark. Code Ann. § 11-9-105 (Supp. 1995)*

■ Cherry's first point on appeal is that the trial court erred when it dismissed Cherry's complaint against Tanda on the grounds of the "exclusive remedy" provision of Ark. Code Ann. § 11-9-105 (Supp. 1995) of the Workers' Compensation Act. According to the Workers' Compensation Act, an employee's remedy against his or her employer for injuries sustained while on the job is to file a claim with the Workers' Compensation Commission. Specifically, the statute declares that:

> The rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, *shall be exclusive of all other rights and remedies of the employee*, his legal representative, dependents, next of kin, or anyone otherwise entitled to recover damages from the employer. . .on account of the injury or death, and the negligent acts of a coemployee shall not be imputed to the employer. No role, capacity, or persona of any employer. . .other than that existing in the role of employer of the employee shall be relevant for consideration for purposes of this chapter, and the rights and remedies provided by this chapter shall in fact be exclusive regardless of the multiple roles, capacities, or personas the employer may be deemed to have.

Ark. Code Ann. § 11-9-105(a) (Supp. 1995) (emphasis added). Moreover, the employer's tort immunity under this provision extends to the employer's insurance carrier. *Burkett v. PPG Indus., Inc.*, 294 Ark. 50, 740 S.W.2d 621 (1987).

Cherry attempts to circumvent the immunity created by Ark. Code Ann. § 11-9-105(a) by asserting that his lawsuit sounds in contract, and not tort, and thus is not barred by this statutory provision.

### A. Third-Party Beneficiary to the Express Indemnity Agreement.

As mentioned above, Tanda contractually agreed to indemnify the City for any injuries or damages resulting from the construction of the landfill. The relevant contract provisions provide that:

> 6.30. To the fullest extent permitted by Laws and Regulations, CONTRACTOR [Tanda] shall indemnify and hold harmless OWNER [City of Fort Smith] and ENGINEER and their consultants, agents and employees from and against all claims, damages, losses and expenses, direct, indirect or consequential. . .arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death. . .and (b) is caused in whole or in part by any negligent act or omission of CONTRACTOR, and subcontractor, any persons or organization directly or indirectly employed by any of them to perform or furnish any of the Work. . .regardless of whether or not it is caused in part by a party indemnified hereun-

der or arises by or is imposed by Law and Regulations regardless of the negligence of any such party.

> 6.31. In any and all claims against OWNER or ENGI-NEER. . .by any employee of CONTRACTOR. . .the indemnification obligation under paragraph 6.30 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for CONTRAC-TOR. . .under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

For his first argument on appeal, Cherry alleges that he was a third-party beneficiary to this indemnity agreement, and thus, he may sue Tanda for enforcement of this contract without running afoul of Ark. Code Ann. § 11-9-105 (Supp. 1995).

Tanda is correct that this court recognized in *C & L Rural Elec. Coop. Corp. v. Kincaid*, 221 Ark. 450, 256 S.W.2d 337 (1953), an exception to the exclusivity provision of the Workers' Compensation Act for the enforcement of indemnity contracts. In *C & L*, a contractor entered into an express indemnity agreement with the site owner before beginning construction. *Id.* During the performance of the contract, one of the contractor's employees was injured. *Id.* The employee received workers' compensation benefits from the employer/contractor and then sued the site owner for damages. *Id.* The site owner paid the injured employee, and then sued the contractor for reimbursement under the indemnification agreement. *Id.* The employer asserted that Ark. Code Ann. § 11-9-105 provided the exclusive remedy for both the employee and "anyone otherwise entitled to recover damages from the employer" which in this case was the site owner. *Id.*

This court rejected the employer's contention, and found that the exclusive remedy provision did not apply because "the present suit is one on an indemnity contract and not an action in tort." *Id.* Hence, according to *C & L*, an indemnitee may enforce an express-indemnity agreement against an employer even though the employer has already paid the injured employee full workers' compensation benefits, and such is not a violation of the exclusivity provision contained in the Workers' Compensation Act. *See also, Nabholtz Const. Co. v. Graham*, 319 Ark. 396, 892

S.W.2d 456 (1995) (reaching the same result without addressing the exclusivity provision).

Likewise, this court has expanded this "indemnity exception" to situations where the employer's indemnity obligation is implied by law, and not part of an express contract. *Smith v. Paragould Light & Water Comm'n*, 303 Ark. 109, 793 S.W.2d 341 (1990); *Oaklawn Jockey Club, Inc. v. Pickens-Bond Const. Co.*, 251 Ark. 1100, 477 S.W.2d 477 (1972). In *Oaklawn*, this court found an implied indemnity contract existed between the site owner and the employer/contractor because the service contract implied a duty on the employer/contractor to perform the work with care and to indemnify the site owner for damages flowing from the breach of that obligation. *Oaklawn, supra.* Likewise, in *Smith*, this court held that a duty imposed on the city/employer by a statutory provision carried with it an implied promise that the city/employer would indemnify another who might be held liable for its failure to properly discharge that duty. *Smith, supra.*

Because this court found the existence of implied indemnity agreements in both *Oaklawn* and *Smith*, the indemnitees were permitted to sue the employers for reimbursement of damages they paid to the injured employees. As with express indemnity agreements, in both cases the court found that the indemnitees were suing on the *indemnity contracts*, and not in tort, and thus their claims were not barred by the exclusive-remedy provision found at Ark. Code Ann. § 11-9-105 (Supp. 1995).

Recently, however, this court declined to find the existence of an implied indemnity agreement in *Mosely Mach. Co. v. Gray Supply Co.*, 310 Ark. 214, 833 S.W.2d 772 (1992). In *Mosley*, this court explained that an implied indemnity agreement will only arise when there is "a special relationship carrying with it the obligation to indemnify." *Id.* Moreover, this court held that in a sales contract, the implied duties or warranties do not run from the purchaser (employer) to the manufacturer, but from the manufacturer to the purchaser. *Id.* This court further found that in contrast to the services contract in *Oaklawn*, no such "special relationship" existed between parties to a mere sales contract, and thus there could be no implied obligation for indemnity. *Id.* Most

importantly, because there was neither an implied nor an express indemnity agreement between the parties, the manufacturer's action for reimbursement for damages it paid to the employer's injured worker was a mere tort action and thus barred by the exclusivity provision of the Workers' Compensation Act. *Id.* This court explained that:

> [w]hen the relation between the parties involves no contract or special relation capable of carrying with it an implied obligation to indemnify, the basic exclusiveness rule generally cannot be defeated by dressing the remedy itself in contractual clothes, such as indemnity.

*Id. See also, Elk Corp. v. Builders Transport Inc.*, 862 F.2d 663 (8th Cir. 1988) and *Dubin v. Circle F. Industries, Inc.*, 558 F.2d 457 (8th Cir. 1979) (refusing to find the existence of an implied indemnity agreement, thus the exclusivity provision of the Workers' Compensation Act precluded the shipper or manufacturer from seeking indemnity from the injured employee's employer); *W.M. Bashlin Co. v. Smith*, 277 Ark. 406, 643 S.W.2d 526 (1982) (refusing to hold an employer liable to a manufacturer or supplier upon a joint tortfeasor theory).

Regardless of whether the indemnity contract is express or implied, the common thread among these cases is that the *indemnitee* sued the employer/indemnitor for enforcement of the indemnity agreement. Cherry's argument is unique in that it asks this court to expand the "indemnity exception" to the exclusivity provision by allowing the *injured employee, and not the indemnitee,* to sue the employer for enforcement of the indemnity contract. Cherry alleges that he may do so as a third-party beneficiary to the express indemnity agreement between Tanda and the City.

Under Arkansas law, there is a presumption that parties contract only for themselves, and a contract will not be construed as having been made for the benefit of third parties unless it clearly appears that such was the intention of the parties. *Little Rock Wastewater Util. v. Larry Moyer Trucking*, 321 Ark. 303, 902 S.W.2d 760 (1995). However, a contract is actionable by a third party when there is substantial evidence of a clear intention to benefit that third party. *Id.* It is not necessary that the person be named in

the contract if he is a member of a class of persons sufficiently described or designated in the contract. *Id.*

■ Cherry asserts that he is a third-party beneficiary to the indemnity contract between Tanda and the City because the language clearly contemplates the payment of damages for injuries to the contractor's employees, such as himself. Whether there may be a third-party beneficiary to an indemnity contract is a matter of first impression for this court. As a general proposition, an indemnitor's obligation to reimburse against loss does not become due until *after* the indemnitee has paid damages to a third party. *Larson Machine v. Wallace*, 268 Ark. 192, 600 S.W.2d 1 (1980). In other words:

> A mere promise to indemnify against damages must also be distinguished. Here the promisor's liability does not arise until the promisee has suffered loss or expense. Until then the promisee has no right of action, and consequently one claiming damages can assert no derivative right against the promisor, much less a direct right. Nor can the promisee sue for the benefit of the persons claiming damages.

2 Samuel Williston & Walter H. E. Jager, *A Treatise on the Law of Contracts* § 403 (3d ed. 1961). *See also* 4 Arthur Linton Corbin, *Corbin on Contracts* § 821 (1951).

■ ■ Tanda's liability under its indemnity contract with the City does not arise until the city sustains a loss or expense. Because a condition precedent to any action by the City against Tanda for recovery under the indemnity contract is the City's payment of damages to a third-party claimant, such as Cherry, it follows that the City's payment of damages would also result in satisfaction of the claim by the third party. Under these circumstances, we hold that Cherry is merely an incidental, and not intended, third-party beneficiary to the indemnity contract. Therefore, as in *Mosley, Bashlin, Dubin*, and *Elk*, Cherry is suing Tanda in tort, and not on the indemnity contract, and accordingly the exclusivity provision bars his action. Clearly, as in *Elk, supra*, Cherry has attempted to dress his tort claim in "contractual clothes" such that he may circumvent the immunity provided to the employer by the exclusivity provision, Ark. Code Ann. § 11-

9-105 (Supp. 1995). Thus, we must reaffirm as stated in *C & L*, that:

> The employer should not be held liable indirectly in an amount that could not be recovered directly, for this would run counter to one of the fundamental purposes of the compensation law.

*C & L, supra* (citing *Baltimore Transit Co. v. Maryland*, 39 A.2d 858 (1944)).

### B. Direct action against Tanda as the City's insurer.

Next, Cherry attempts to avoid the exclusive remedy provision found at Ark. Code Ann. § 11-9-105 by claiming that Tanda was in fact the City's insurer such that he may maintain a direct action against Tanda as the insurer of an otherwise immune municipality.

According to Ark. Code Ann. § 21-9-301 (Repl. 1996), cities, such as Fort Smith, and other political subdivisions of the state are immune from "suit for damages except to the extent that they may be covered by liability insurance." Although an immune entity is not required to carry insurance, if it does so then an injured party may sue the insurance carrier directly for the extent of the coverage. Ark. Code Ann. § 23-79-210 (Repl. 1992).

Based on these two statutes, Cherry argues that the City of Fort Smith obtained "insurance" by executing the agreement whereby Tanda agreed to indemnify the City and obtain insurance to cover this indemnity responsibility. The basic flaw in Cherry's argument is that the Arkansas Insurance Code specifically defines an insurer as "every person engaged as indemnitor, surety, or contractor *in the business of entering into contracts of insurance.*" Ark. Code Ann. § 23-60-101 (Repl. 1994) (emphasis added).

Tanda is "in the business" of construction, not insurance, and the indemnification agreement was a mere incidental obligation of its contractual relationship with the City as a contractor. In other words, Tanda is not "in the business of entering into contracts of insurance" as required by the statute, and thus, Cherry cannot maintain a direct action under Ark. Code Ann. § 23-79-210 against Tanda as an insurer of an immune entity.

■ Moreover, the indemnity agreement was not an "insurance" agreement as provided by the statute which defines "insurance" as:

> any agreement, contract or other transaction whereby one party, the "insurer," is obligated to confer benefit of pecuniary value upon another party, the "insured" of "beneficiary," dependent upon the happening of a fortuitous event in which the insured or beneficiary has, or is expected to have at the time of such happening, a material interest which will be adversely affected by the happening of such event.

Ark. Code Ann. § 23-60-102 (Repl. 1994). In deciding whether a particular agreement fits this definition, this court has focused on the following three factors: 1) whether the plan is mandatory; 2) whether a profit motive exists in offering the plan; and 3) whether the plan is intended to be actuarially sound. *Douglass v. Dynamic Enter. Inc.*, 315 Ark. 575, 869 S.W.2d 14 (1994); *Waire v. Joseph*, 308 Ark. 528, 825 S.W.2d. 594 (1992).

■ In this case, Tanda was not receiving money in exchange for its promise to indemnify nor was the plan actuarially sound. In fact, the indemnity plan was a liability, not an asset to Tanda. Finally, in the construction contract, the City agrees to obtain its own liability and property insurance. Hence, it is clear that the parties never intended Tanda to be the "insurer" of the City. Under these circumstances, we decline to construe the indemnity agreement as an insurance contract, and thus Cherry is not entitled to maintain a direct action against Tanda as an "insurer" of the City.

### C. Breach of a Contractual Duty of Care.

Next, Cherry asserts that it is suing Tanda for its implied contractual duty to supply a safe place to work. Specifically, Cherry alleges that several provisions of Tanda's construction contract with the City required that Tanda follow the relevant safety regulations and maintain appropriate safeguards. Thus, Cherry argues, it is entitled to sue Tanda for the alleged breach of these contractual obligations.

■ ■ This argument is clearly contrary to the plain meaning of the exclusive-remedy provision, which unequivocally states that

> The rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, shall be exclusive *of all other rights and remedies of the employee.* . . .

Ark. Code Ann. § 11-9-105(a) (Supp. 1995) (emphasis added). Whether Cherry couches his complaint against Tanda in terms of contract, or tort, his action is barred under the exclusive-remedy provision. *See Gullett v. Brown*, 307 Ark. 385, 820 S.W.2d 457 (1991) (holding that the exclusive-remedy provision barred the employee's suit against his employer for enforcement of an under-insured-motorist insurance contract).

### 4. Waiver of the Exclusive Remedy Protection

For his final argument for reversal of the trial court's dismissal of his lawsuit against Tanda, Cherry argues that Tanda waived the protection of the exclusive-remedy provision when it agreed to the following clause contained in the construction contract:

> 6.31 . . .the indemnification obligation under paragraph 6.30 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for CONTRACTOR or any such Subcontractor or other person or organization under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

Cherry's argument here is erroneous because it simply misconstrues the common sense meaning of the contract. Clearly by this provision, Tanda agreed to indemnify *the City* beyond what it was required to pay an injured employee under the Workers' Compensation Act. In other words, this clause related to the amount of liability to *the City*, and not to an employee. In no way does this provision relate to or affect Tanda's obligations to its employees. Hence, this argument also has no merit. Accordingly, we affirm the trial court's dismissal of Cherry's lawsuit against Tanda.

## II. Direct Action Against the Employer's Insurance Carrier as the "Insurer" of the City.

Prior to this lawsuit, Cherry attempted to sue the City of Fort Smith for the wrongful death of David Cherry; however, the case was dismissed because the City of Fort Smith is immune from tort liability under Ark. Code Ann. § 21-9-301 (Repl. 1996). Although it is not clear from the record, it appears that the City of Fort Smith did not obtain an insurance contract, and thus Cherry could not avoid the City's immunity by proceeding directly against the City's insurance carrier as provided by Ark. Code Ann. § 23-79-210 (Repl. 1992).

Hence, Cherry sued Transcontinental, which is the insurance carrier for Tanda, not the City. As mentioned previously, the trial court dismissed this action on summary judgment. On appeal, Cherry raises two arguments as to why it may proceed directly against Transcontinental. We find no merit to either argument.

### A. The City's Immunity

First, Cherry argues that it may proceed against Transcontinental as a quasi-insurer of the City, which is clearly immune from suit under Ark. Code Ann. § 21-9-301 (Repl. 1996). More specifically, Cherry argues that by virtue of the indemnity agreement between Tanda and the City, Transcontinental agreed to pay for the City's negligence.

This argument is clearly against the policy of the direct- action statute, and established caselaw. In *Rogers v. Tudor Ins. Co.*, 325 Ark. 226, 925 S.W.2d 395 (1996), we recently held that in order for the direct-action statute to apply the following elements must exist:

> (1) the liability insurance must be *carried by a nonprofit corporation*;
>
> (2) a person must suffer injury or damage on account of negligence or wrongful conduct; and
>
> (3) the damage or injury must be on account of the negligence or wrongful conduct of "servants, agents, or employees" of

the nonprofit corporation acting within the scope of their agency or employment.

(Emphasis added.) In this case, the Transcontinental insurance contract was "carried by" Tanda, not the immune City. Thus, Cherry fails to establish the first element of the statute.

Furthermore, rejection of Cherry's argument is consistent with a federal decision on virtually identical facts. As in this case, in *Lacey v. Bekaert Steel Wire Corp.*, 799 F.2d 434 (8th Cir. 1986), the Bekaert Steel Wire Corp. ("Bekaert") entered into a contract with the City of Van Buren, and pursuant to that contract Bekaert agreed to indemnify the City and to obtain an insurance contract which it subsequently obtained from CNA Insurance. Several years later, Rebecca Lacey was killed on the Bekaert property, and her estate sued the City, Bekaert, and CNA insurance. *Id.* The trial court found that the City was immune from liability and dismissed Lacey's action against it. *Id.*

As in this case, Lacey argued that it could directly sue CNA Insurance for the City's negligence even though the listed insured was Bekaert. *Id.* The Eighth Circuit rejected Lacey's argument and held that:

> the narrow purpose of the statute serves only to permit direct action against insurance carriers issuing policies *to enumerated immune organizations.*

(Emphasis added.) Hence, the court affirmed the district court's dismissal of Lacey's direct action against CNA Insurance.

As in *Lacey*, Cherry attempts to circumvent the immunity provision by directly suing an insurance company for acts done by an entity other than the named insured. Surely, the drafters of the Ark. Code Ann. § 23-79-210 (Repl. 1992) never intended to hold an insurance company directly liable for actions of a person or entity the insurance company never agreed to insure. Therefore, we adopt the Eighth Circuit's holding in *Lacey* and reject Cherry's argument for reversal.

## B. Immunity of Tanda.

Finally, Cherry alleges that pursuant to Ark. Code Ann. § 23-79-210 (Repl. 1992), it may directly sue Transcontinental because the exclusive remedy provision found at Ark. Code Ann. § 11-9-105 (Supp. 1995) makes Tanda "immune" from tort liability. As with Cherry's other points on appeal, this argument has no merit.

In *Helms v. Southern Farm Bureau Casualty Ins.*, 281 Ark. 450, 664 S.W.2d 870 (1984), this court said that:

> other statutes must yield to the Workers' Compensation Act because it is in the interest of the public policy to give that act priority as an exclusive remedy.

Thus, in *Helms* this court held that the exclusive remedy prevented injured teachers from recovering under the school district's automobile insurance agreement which it was required by statute to maintain as an exception to the immunity doctrine.

Moreover, in *Burkett v. PPG Indus. Inc.*, 294 Ark. 50, 740 S.W.2d 621 (1987), this court specifically held that the exclusive-remedy provision also applied to insulate the employer's insurance carrier from tort liability. Hence, under these two decisions, Cherry may not maintain a direct action against Transcontinental as Tanda's insurance carrier.

Affirmed.