# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1934

_____

Laura Applewhite Miller,                    *
Individually and as Administratrix          *
of the Estate of Bill Denver                *
Applewhite, Deceased,                       *
                                            *
            Plaintiff,                       *
                                            *
      v.                                     *
                                            *
Pilgrim's Pride Corporation,                 *    Appeal from the United States
                                            *    District Court for the
            Defendant.                       *    Western District of Arkansas.
--------------------------------            *
Pilgrim's Pride Corporation,                 *
                                            *
   Third Party Plaintiff - Appellant,       *
                                            *
      v.                                     *
                                            *
Simmons Mill Elevator Erection, Inc.,        *
                                            *
   Third Party Defendant - Appellee.         *

_____

Submitted:  December 19, 2003

Filed:  April 29, 2004

_____

Before MELLOY, MCMILLIAN, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

In this indemnification action, Pilgrim's Pride Corporation ("PPC") appeals the dismissal of its third-party complaint against Simmons Mill Elevator Erection, Inc. ("Simmons"). We affirm.

This dispute stems from the death of Bill Applewhite, a Simmons employee and a resident of Texas. Pilgrim's Pride hired Simmons to build and install a salt bin on top of a feed mill at a PPC facility in Hope, Arkansas. The parties did not execute a written agreement of any kind to govern their relationship. While working on this project, Applewhite apparently fell from the top of the feed mill when an adjacent roof on which he was standing gave way. After the accident, Simmons, a Texas corporation, fulfilled its statutory obligations to Applewhite's heirs under the Texas workers compensation laws. His heirs then sued PPC alleging that Applewhite's death was caused by negligence on the part of PPC. In turn, PPC filed a third-party complaint against Simmons seeking indemnification. Eventually, PPC settled the suit with Applewhite's heirs and Simmons moved to dismiss PPC's third-party claim. The District Court[1] determined that Texas law should govern PPC's claim and that Texas law prohibited such an indemnification action except where the parties had a pre-existing written agreement that required one party to indemnify the other. Therefore, the District Court granted Simmons' motion to dismiss the claim. On appeal, PPC urges that the District Court erred when it concluded that Texas law applied and when it concluded that Texas and Arkansas law forbade the indemnification suit. We affirm.

We review a district court's order granting a defendant's motion to dismiss de novo. Casazza v. Kiser, 313 F.3d 414, 418 (8th Cir. 2002). As does a district court, we view the allegations in the complaint as true and we view the facts in the

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

-2-

light most favorable to the plaintiff. We will affirm the dismissal of the complaint only if it appears that the plaintiff can prove no set of facts that entitle him to recovery. Id.

A district court applies the law of the forum state when exercising its diversity jurisdiction. Klaxon Co. v. Stento Elec. Man. Co., 313 U.S. 487, 496 (1941). In this case, the parties agree that Arkansas' choice of law doctrines govern the matter, but disagree as to the outcome of the application. For its part, the District Court applied the five-factor balancing test that the Arkansas Supreme Court has adopted, see Williams v. Carr, 565 S.W.2d 400, 404 (Ark. 1978), and held that Texas law applied. We agree that Texas law governs the merits of this suit.

The Arkansas Supreme Court has adopted Professor Robert A. Leflar's five-factor approach to deciding choice-of-law questions. Wallis v. Mrs. Smith's Pie Co., 550 S.W.2d 453, 456 (Ark. 1977). Arkansas has not, however, altogether discarded the more traditional approach represented by the *lex loci delicti* rule. Gomez v. ITT Educ. Servs., Inc., 71 S.W.3d 542, 546 (Ark. 2002) (noting that "the adoption of the Leflar factors in Wallis and subsequent cases appears to be merely a softening of what previously had been a rigid formulaic application of the former rule of law"). Accordingly, we must consider the *lex loci delicti* rule within the framework of the five Leflar factors: "(1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law." Id. (citations omitted). In our view, the question of which State's law should be applied turns on the fourth factor.

The first of the five Leflar factors is predictability of results. The Gomez court explained that this factor is primarily aimed at avoiding forum shopping and ensuring uniform results. Id. at 547. In Hughes v. Wal-Mart Stores, Inc., 250 F.3d 618, 620 (8th Cir. 2001), we noted that under Arkansas law, predictability is ordinarily not a

crucial concern when the suit arises out of an accident. Because this suit does stem from an accident and because the laws of Texas and Arkansas would yield substantially the same result, this factor does not weigh heavily in the balance.

The second and third factors, maintenance of interstate and international order and simplification of the judicial task, are not at issue here. Parties are unlikely to seek out Arkansas to undertake tortious behavior and thereby upset interstate order based on whether Arkansas or Texas law applies in this case. See Gomez 71 S.W.3d at 547. As for simplification of the judicial task, application of either State's laws will not simplify our task and, by their very nature, federal courts regularly apply the laws of foreign jurisdictions, which relegates this factor to a minor concern at most. Hughes, 250 F.3d at 620.

The fourth factor, advancement of the forum state's governmental interests, is the crucial factor in this case. The traditional *lex loci delicti* rule is a reflection of an older attitude, which held that forum states had an interest in retaining jurisdiction over, and applying their laws to, suits arising from acts within their jurisdiction so as to insure that injuries to their citizens were redressed. See, e.g., Int'l Paper Co. v. Ouellette, 479 U.S. 481, 502 n.1 (1987) (opinion of Brennan, J., concurring). Arkansas' adoption of the Leflar approach without discarding this traditional rule shows that this interest is still applicable, but does not control the outcome. Moreover, the adoption of the Leflar factors indicates that in this age of global commerce, Arkansas' governmental interests are not fully defined by the narrower *lex loci delicti* rule. As we already have noted, Applewhite was a resident of Texas and was compensated under Texas's workers compensation law. If the deceased employee were an Arkansas resident, the State of Arkansas would clearly have a vested interest in the application of the whole of its workers compensation scheme to the proceedings in order to fully vindicate the rationale behind its laws. As the case exists now, we can see no state interest that would be advanced by applying

Arkansas, as opposed to Texas, principles of indemnification.[2] Rather, it is in Arkansas's interest to have the case decided by applying Texas law in order to vindicate Texas's interest in having its workers compensation scheme applied in a uniform manner. This principle of comity thus guides our analysis of this factor and weighs heavily in the balance. See Robert A. Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U. L. Rev. 267, 287 (1966) (discussing comity as a relevant consideration under the second factor, interstate order).

Finally, we have noted that the fifth factor, application of the better rule of law, does not reflect a subjective judicial preference for one state's more or less elegant law, but is aimed at avoiding the application of unfair or archaic laws. Hughes, 250 F.3d at 621. This is not a case where unfair or archaic laws are alleged to be at play. Professor Robert A. Leflar, in his article, Choice-Influencing Considerations in Conflicts Law, notes that this factor is also concerned with rejecting laws that would undermine fair commercial transactions and frustrate the parties' intent. Leflar at 297–304. In this case, the parties declined to execute a written agreement of any type and, consequently, this concern is absent here.

Application of the five-factor test thus leads us to sustain the District Court's determination that Texas law should govern this case. This conclusion reflects our

---

[2]In any event, the suit likely could not proceed even if we applied Arkansas law. Like Texas, Arkansas has found exceptions to the exclusivity-of-remedy provisions in its workers compensation laws. See Ark. Code Ann. § 11-9-105 (Michie 1987). Though not codified, these exceptions are the same as those allowed under Texas law. Thus, the aggrieved third party must show an independent duty "from which an obligation to indemnify might arise." Smith v. Paragould Light & Water Comm'n, 793 S.W.2d 341, 342 (Ark. 1990). In the absence of a written contract establishing such an obligation, the third party must point to a statute that creates a duty to indemnify. See id. at 343; cf. Mosely Machinery Co. v. Gray Supply Co., 833 S.W.2d 772, 774 (Ark. 1992). As we note infra, PPC has failed to identify such a statute.

judgment that Arkansas's state interest is best advanced by upholding principles of comity, which require that Texas workers compensation law apply to the whole of the case.

Having decided that Texas law should govern this case, we have little trouble concluding that the District Court did not err when it granted Simmons's 12(b)(6) motion to dismiss. The District Court held that section 417.004 of the Texas Labor Code clearly prohibited this indemnification action by Pilgrim's Pride. Section 417.004 provides:

> In an action for damages brought by an injured employee, a legal beneficiary, or an insurance carrier against a third party liable to pay damages for the injury or death under this chapter that results in a judgment against the third party or a settlement by the third party, the employer is not liable to the third party for reimbursement or damages based on the judgment or settlement *unless the employer executed, before the injury or death occurred, a written agreement with the third party to assume the liability*.

Tex. Lab. Code § 417.004 (1996) (emphasis added). We agree with the District Court that this provision's plain language forbids this type of indemnification suit absent a pre-existing written agreement that so provides. On appeal, PPC urges that Texas courts have allowed an exception to this general prohibition where the employer's breach of a statutory duty caused the employee's injury. See Whiteco Metrocom, Inc. v. Texas Utilities Elec. Co., 30 S.W.3d 421, 424 (Tex. App. 2000). We also agree that there appears to be such an exception where a duty is created and defined by statute and where the statute itself provides that the breaching party is responsible for all damages caused by the breach. See id. at 424–25. In this case, not only has PPC waived this argument by not presenting it in the District Court, see Heart of Am. Grain Inspection Servs., Inc. v. Mo. Dept. of Agriculture, 123 F.3d 1098, 1105 (8th Cir. 1997), it also has failed to point to any specific statutory duty that both creates

and defines a duty *and* provides that the breaching party is responsible for all damages caused by a breach of that duty.  <u>See</u> Br. of Appellant at 24 (arguing that OSHA statutory scheme creates general duty that supports indemnity action). Because PPC's indemnification suit against Simmons is forbidden by Texas law, the suit may not proceed.

For the reasons stated, the decision of the District Court is affirmed.

_____