

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-359

| | |
|---|---|
| YOSEF KAPACH<br>APPELLANT | Opinion Delivered SEPTEMBER 9, 2015 |
| V. | APPEAL FROM THE MARION COUNTY CIRCUIT COURT [NO. CV 2010-92-3] |
| BETTINE FIELD CARROLL<br>APPELLEE | HONORABLE JOHN R. PUTMAN, JUDGE |
| | AFFIRMED; MOTION FOR COSTS AND ATTORNEY'S FEES DENIED |

## CLIFF HOOFMAN, Judge

This appeal arises out of a failed real-estate transaction.[1] Yosef Kapach supplied $500,000 that was used as earnest money to secure a contract for the purchase of land in Boone County, Arkansas. The transaction was never completed, and the seller of the land, Bettine Field Carroll, retained the $500,000. Mr. Kapach sued Ms. Carroll for unjust enrichment, and following a bench trial, the trial court dismissed Mr. Kapach's complaint with prejudice. He appeals. Mr. Kapach asserts two points on appeal: (1) he argues that the trial court erred in refusing to admit his proferred exhibit C-1 and (2) he contends that the trial court erred in dismissing his complaint for unjust enrichment.[2] We affirm.

---

[1] This court previously ordered rebriefing in this case because of abstracting deficiencies. *Kapach v. Carroll*, 2015 Ark. App. 154.

[2] Also before our court is the appellee's motion for costs and attorney's fees. This motion is denied.

In May 2006, Bettine Field Carroll entered into a contract to sell 1,100 acres of land in Boone County, Arkansas, to Leo National, Inc. (Leo National) for $3.1 million.[3] Leo National encountered difficulty in timely completing the sale, and the parties negotiated a series of extensions to the contract. Two of the extensions are pertinent for our review.

The first notable extension occurred on December 5, 2006. On that date, Leo National transferred $200,000 to Marion County Abstract Company in order to secure an extension on the closing date of the contract. Mr. Kapach supplied the $200,000 used to obtain the extension. The contract for extension provided that this money would be forfeited in the event that the sale was not completed.

The second pertinent extension occurred on February 23, 2007. On this date, Leo National transferred $300,000 to Marion County Abstract to again extend the contract's closing date an additional time. Mr. Kapach supplied the $300,000 for this extension. Once again, the contract for extension provided that this money would be forfeited in the event the sale was not completed.

The terms of the real-estate contract authorized Leo National to assign its rights under the contract. Leo National did, in fact, assign its rights under the contract to Lions Gate, LLC (Lions Gate) on February 26, 2007.

The real estate contract between Ms. Carroll and Leo National/Lions Gate was never effectuated, and the contract was cancelled. Pursuant to the terms of the agreements, Ms.

---

[3] Clarice Siegman acted as the agent for the Leo National, and Marion County Abstract Company, Inc. served as the escrow agent.

Carroll retained all earnest money, including the $500,000 paid by Mr. Kapach.

During the pendency of these negotiations, Charles Stricklan, the project manager for Lions Gate, apparently formed another corporation—Lions Gate Partners, LLC (Lions Gate Partners). Mr. Stricklan was negotiating with Ms. Carroll on behalf of Lions Gate Partners while he was simultaneously serving as project manager for Lions Gate. Ms. Carroll entered into a back-up contract with Lions Gate Partners for the purchase of the land in the event that the contract with Lions Gate did not close. Three days after the contract with Lions Gate expired, Ms. Carroll and Lions Gate Partners closed on a contract for sale of the same 1,100 acres for $3.1 million. Feeling wronged by this, Mr. Kapach requested that Ms. Carroll return the $500,000 he paid to secure the extensions on the contract between her and Leo National/Lions Gate. Ms. Carroll refused.

Mr. Kapach sued Ms. Carroll for unjust enrichment based upon her retention of the $500,000 in earnest money. After a bench trial, the court denied Mr. Kapach's claim. This appeal followed.

Mr. Kapach first argues that the trial court erred in refusing to admit his proferred exhibit C-1. Exhibit C-1 is an email from Charles Stricklan in his capacity as the managing member and president of Lions Gate Partners to Clarice Siegman, the agent for Leo National/Lions Gate. In the email, Mr. Stricklan requested a few days to secure other investors to purchase the property. Mr. Kapach contends that without the introduction of exhibit C-1, the trial court could not understand his theory of the case.

This court will not overturn a trial court's evidentiary ruling absent clear error or a

SLIP OPINION

manifest abuse of discretion. *Stewart v. State*, 2012 Ark. 349, 423 S.W.3d 69. Abuse of discretion is "a high threshold that does not simply require error in the trial court's decision, but requires that the trial court acted improvidently, thoughtlessly, or without due consideration." *St. Joseph's Mercy Health Ctr. v. Edwards*, 2011 Ark. App. 560, 385 S.W.3d 849. Additionally, a trial court's ruling will not be reversed on the admission or rejection of evidence absent a showing of prejudice. *Id.*

The trial court refused to admit exhibit C-1 after Ms. Carroll's counsel objected on the grounds of hearsay. On appeal, Mr. Kapach contends that the email did not meet the definition of hearsay because it is an admission by a party-opponent offered against a party and is a statement of which he has manifested his adoption or belief in its truth. Ark. R. Evid. 801(d)(2)(ii). However, when counsel for Ms. Carroll objected to the introduction of Exhibit C-1 on the basis of hearsay, counsel for Mr. Kapach conceded that the email was "technically hearsay." Additionally, counsel never argued to the trial court that the email was admissible pursuant to Ark. R. Evid. 801(d)(2)(ii).

This court will not consider arguments made for the first time on appeal. *Brown v. Lee*, 2012 Ark. 417, 424 S.W.3d 817. Moreover, a party is bound by the scope and nature of the arguments made at trial. *Id.* Because Mr. Kapach did not argue below that the hearsay exception applied to exhibit C-1, we summarily reject this argument.

We now turn our attention to whether the trial court erred in dismissing Mr. Kapach's claim for unjust enrichment. Unjust enrichment is based on the principle that one person should not be permitted unjustly to enrich himself at the expense of another, but

should be required to make restitution of or for property or benefits received, retained, or appropriated, whether requested or not, when it is just and equitable that restitution should be made. *Adkinson v. Kilgore*, 62 Ark. App. 247, 970 S.W.2d 327 (1998). It is not necessary, in order to create an obligation to make restitution, that the party unjustly enriched should have been guilty of a wrongful act. *Frigillana v. Frigillana*, 266 Ark. 296, 584 S.W.2d 30 (1979). The question is simply whether he obtained something of value, under such circumstances that, in equity and good conscience, he ought not to retain. *Id*. Because a bench trial was held, we are tasked with reviewing whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Omni Holding & Dev. Corp. v. C.A.G. Invs., Inc.*, 370 Ark. 220, 258 S.W.3d 374 (2007).

The theory of Mr. Kapach's case is that Ms. Carroll participated in a plot or scheme to defraud him of his $500,000. In its judgment, the trial court notes that it found no credible evidence that Ms. Carroll was involved in a plot with Mr. Stricklan to benefit herself and Mr. Stricklan to the detriment of Mr. Kapach. Even so, the court correctly noted that the doctrine of unjust enrichment does not require that one unjustly enriched be guilty of a wrongful action and that the operative question for its review was whether Ms. Carroll obtained something of value under circumstances that, in equity and good conscience, she ought not to retain. *Frigillana*, *supra*.

The trial court determined that Ms. Carroll was entitled to retain Mr. Kapach's $500,000 because these funds were given to her in exchange for valuable consideration. That consideration was evidenced in the terms of the contracts, which extended the time the

5

SLIP OPINION

buyer had to satisfy the terms of the agreement in exchange for additional earnest money. This process was lengthy and ultimately in vain. While the trial court heard extensive testimony regarding the alleged plot to defraud Mr. Kapach, it also heard from Ms. Carroll who testified that she continued to grant extensions to the original contract because she wanted desperately to sell the land because owning it was burdensome. The trial court heard and evaluated this evidence and was not convinced that Ms. Carroll, in equity and good conscience, ought to return the $500,000. We cannot say that the trial court's decision was clearly erroneous.

Affirmed; motion for costs and attorney's fees denied.

ABRAMSON and GRUBER, JJ., agree.

*Davis Law Firm*, by: *Steven B. Davis*; and *Cherryhomes Law Firm*, by: *Michael Tom Cherryhomes*, for appellant.

*Everett, Wales & Comstock*, by: *Jason H. Wales*, for appellee.