

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CV–16–39

| | |
|---|---|
| R&L CARRIERS SHARED SERVICES, LLC and DEAN WETHINGTON<br><br>APPELLANTS<br><br>V.<br><br>STUART MARKLEY and MADISON COUNTY TELEPHONE COMPANY, INC.<br><br>APPELLEES | Opinion Delivered: APRIL 19, 2017<br><br>APPEAL FROM THE MADISON COUNTY CIRCUIT COURT [NO. 44CV-2014-029-5]<br><br>HONORABLE BETH BRYAN, JUDGE<br><br>AFFIRMED |

**LARRY D. VAUGHT, Judge**

This is an appeal from a negligence action involving an eighteen-wheeler that hit a telephone line and injured a worker repairing the line. In this appeal, we consider whether the worker's employer can be liable for negligence under the theory of implied indemnity. We also review several alleged evidentiary errors and decide whether the circuit court erred by refusing to grant a motion for judgment notwithstanding the verdict (JNOV) or alternatively for a new trial. We affirm.

## I. *Background*

This case begins with a low-hanging telephone line that stretched across the entry to Roy's Body Shop in Madison County, Arkansas. Madison County Telephone Company, Inc. (MCTC), dispatched its employee Stuart Markley to repair the low-hanging line. Markley worked from the raised bucket of a work truck to repair the line. He was not

wearing a safety harness, and he did not put out any warning cones to alert others to his presence.

During this time, Dean Wethington, in the scope of his employment with R&L Carriers Shared Services, LLC (R&L), was making a delivery to Roy's Body Shop in an eighteen-wheeler. While driving the eighteen-wheeler into the entrance of Roy's Body Shop, Wethington's truck snagged the low-hanging telephone line that Markley was repairing. This set off a chain of events that left Markley severely injured.

Markley sued Wethington and R&L for negligence and recklessness. R&L and Wethington responded and alleged comparative fault by Markley. Specifically, they emphasized Markley's failure to abide by certain National Electric Safety Code (NESC) and Occupational Safety and Health Administration (OSHA) regulations as well as Arkansas statutes. R&L also filed a third-party complaint against MCTC, Roy's Body Shop, and its owner, Roy Elsey.[1]

In its third-party complaint against MCTC, R&L claimed that MCTC's negligent supervision and training of Markley contributed to Markley's injuries and that MCTC failed to perform some of its statutory and regulatory responsibilities. MCTC filed a motion to dismiss R&L's complaint against it on the basis that, because it had paid workers'-compensation benefits to Markley, it could not be liable for negligence. R&L responded by arguing that MCTC could be held liable under the theory of implied indemnity. The circuit court denied MCTC's motion to dismiss. At this juncture, MCTC and R&L filed competing motions for summary judgment on the issue of whether MCTC had an implied

---

[1]Roy Elsey and Roy's Body Shop were dismissed from the case without prejudice.

SLIP OPINION

duty to indemnify R&L. The circuit court denied MCTC's motion and took R&L's motion under advisement. It also severed the negligence and indemnity claims and bifurcated the trial.

The issues between R&L, Wethington, and Markley were tried to a jury in July 2015. The jury returned a verdict in favor of Markley, finding that he was 35 percent negligent and that R&L and Wethington were 65 percent negligent. It found that Markley's damages were $570,000, resulting in a judgment against R&L and Wethington in the amount of $370,500.

Following the entry of the judgment, R&L and Wethington filed a motion for JNOV or alternatively for a new trial. The motion was based on the premise that the jury's verdict was not based on substantial evidence and that the circuit court committed evidentiary errors. The motion was deemed denied.

MCTC also filed a second motion for summary judgment on the issue of implied indemnity. R&L's competing motion was still under advisement. After a hearing, the circuit court granted MCTC's motion and found that MCTC did not have a duty to indemnify R&L. The circuit court also denied R&L's motion for summary judgment. The circuit court entered an order and certification of final judgment, and this appeal by R&L and Wethington followed.

On appeal, R&L and Wethington argue that the circuit court (1) erroneously granted summary judgment to MCTC, (2) erred in denying their motion for JNOV or a new trial, and (3) committed evidentiary errors.

## II. *Summary Judgment*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ark. R. Civ. P. 56(c). A circuit court's conclusion on a question of law is reviewed de novo and is given no deference on appeal. *Crafton, Tull, Sparks & Assocs. v. Ruskin Heights, LLC*, 2015 Ark. 1, 453 S.W.3d 667. And when the parties agree on the facts, the appellate court simply determines whether the appellee was entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgment, as they did in this appeal, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving this case. *Id.*

Our charge is to determine whether the circuit court erred in ruling that MCTC was not liable to R&L on the basis of implied indemnity. In seeking resolution of this issue, the parties posed two overarching questions to the circuit court. First, the circuit court must consider whether there was a special relationship between MCTC and R&L to give rise to a duty of implied indemnity. If a special relationship exists, the circuit court considers whether an indemnitee can recover from an indemnitor for the indemnitee's own negligence. We focus our review on whether a special relationship existed. Because we conclude that MCTC did not have a special relationship with R&L, we affirm without reaching the merits of the second argument raised by the parties.

The Arkansas Workers' Compensation Act, codified at Arkansas Code Annotated sections 11-9-101 et seq. (Repl. 2012 & Supp. 2015), provides for the payment of disability

benefits to workers who suffer an injury in the course of their employment. The Act provides that an employer cannot be sued or joined by a third party as a joint tortfeasor. Ark. Code Ann. § 11-9-105. However, there is a recognized exception to the exclusivity of the workers'-compensation remedy when there is a contract or special relationship capable of carrying with it an implied obligation to indemnify. *Mosley Mach. Co., Inc. v. Gray Supply Co.*, 310 Ark. 214, 833 S.W.2d 772 (1992). Implied indemnity is an equitable remedy. *Id*. A special relationship may be created by operation of law when statutes or regulations govern an employer's conduct. *Smith v. Paragould Light & Water Comm'n*, 303 Ark. 109, 793 S.W.2d 341 (1990).

R&L argues that OSHA and NESC regulations as well as Arkansas statutes give rise to a special relationship between it and MCTC. The relevant statutes and regulations placed several obligations on MCTC. MCTC is required to construct, operate, and maintain its telephone lines in a safe and reasonable condition. MCTC must also keep its lines free and clear of roadways and public areas over which they hang. Additionally, MCTC has a duty to properly supervise and train its employees. However, these statutory and regulatory duties differ from the duties imposed in cases where our supreme court has held that there is a special relationship giving rise to an implied duty to indemnify.

*Smith v. Paragould Light & Water Commission*, 303 Ark. 109, 793 S.W.2d 341 (1990) and *Intents, Inc. v. Southwestern Electric Power Co.*, 2011 Ark. 32, 376 S.W.3d 435 are particularly instructive in highlighting the distinction. In *Smith*, a contractor sought indemnity from a water commission after an employee had been killed digging a trench to connect a sewer line. Our supreme court held that the "Tapping of Sewers" statute, codified

at Arkansas Code Annotated section 14-235-305 (Repl. 1998), which provides that a municipality shall regulate the terms, time, and manner with which parties may tap sewers, created a special relationship between the contractor and the water commission. *Smith*, 303 Ark. at 113, 793 S.W.2d at 343. In *Intents*, employees injured by voltage from a utility line sued the utility company, and the utility company sought recovery from the employer of the injured workers under a theory of implied indemnity. Our supreme court held that the Work Near High Voltage Lines Act, an act codified at Arkansas Code Annotated section 11-5-307 that requires anyone working near high-voltage lines to notify the utility company of the work, created a special relationship giving rise to an employer's implied duty to indemnify. *Intents*, 2011 Ark. at 12, 376 S.W.3d at 442.

In each of these cases, the statutes or regulations imposed on the indemnitor a specific and supervisory duty over the indemnitee. No such relationship exists here. The relevant statutes and safety regulations that MCTC is said to have violated merely create a duty of safety to the public and MCTC's employees. Assuming *arguendo* that a duty of safety to the public gave rise to a special relationship between R&L and MCTC, MCTC could potentially be liable to every member of the public for implied indemnity. Accordingly, we affirm the circuit court's grant of summary judgment to MCTC and hold that there was no special relationship between MCTC and R&L that gave rise to an implied duty to indemnify.

SLIP OPINION

III. *The JNOV and Motion for New Trial*

Here, R&L and Wethington[2] challenge the circuit court's denial of their motion for JNOV or alternatively for a new trial. The crux of appellants' argument is that because Markley's damages were not foreseeable, appellants could not have been negligent.

The standard of review of the denial of a motion for JNOV is whether the jury's verdict is supported by substantial evidence. *Stewart Title Guar. Co. v. Am. Abstract & Title Co.*, 363 Ark. 530, 537, 215 S.W.3d 596, 601 (2005). Similarly, the standard of review of the denial of a motion for new trial on the issue of liability is whether the jury's verdict is supported by substantial evidence. *Pearson v. Henrickson*, 336 Ark. 12, 983 S.W.2d 419 (1999). Substantial evidence goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Ethyl Corp. v. Johnson*, 345 Ark. 476, 49 S.W.3d 644 (2001).

To sustain an action for negligence, there must be proof "that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's damages." *Lloyd v. Pier W. Prop. Owners Ass'n*, 2015 Ark. App. 487, at 4, 470 S.W.3d 293, 297. Negligence occurs "where an ordinarily prudent person in the same situation would foresee such an appreciable risk of harm to others that he would not act or at least would act in a more careful manner." *White River Rural Water Dist. v. Moon*, 310 Ark. 624, 626, 839 S.W.2d 211, 212 (1992). Foreseeability is a necessary component of negligence. *Ethyl Corp.*, *supra*. The actor need not foresee the particular

---

[2] For the remaining points on appeal, we refer to R&L and Wethington as appellants.

injury that occurs, but foreseeability requires that the harm be "within the range of probability as viewed by the ordinary man." *Id*. at 482, 49 S.W.3d at 648.

Appellants argue that there was no indication to Wethington that someone would be injured by his attempt to drive under the low-hanging line. We disagree. Although Wethington testified that he did not see Markley until after the accident had occurred and that the evidence showed that there were no warnings to indicate that work was being done to the line, there is substantial evidence to establish that Wethington foresaw danger. Wethington admitted seeing a low-hanging line and understood it was possible that someone could be hurt if the line became caught on his truck. Wethington also admitted seeing the bucket truck. Although the precise harm that resulted may not have been foreseeable to Wethington, there was substantial evidence of an appreciable risk of harm. Accordingly, we affirm the circuit court's denial of the motion for JNOV or alternatively for a new trial.

## IV. *Evidentiary Errors*

Appellants also challenge three evidentiary rulings made by the circuit court. They argue that the circuit court erred by (1) excluding testimony about Markley's receipt of workers'-compensation benefits, (2) not allowing the introduction of the deposition testimony of Joe Shrum, and (3) allowing testimony that Markley's hypothetical compliance with safety-harness regulations would have led to more serious injuries or even death. In reviewing these alleged evidentiary errors, our court will not overturn an evidentiary ruling absent clear error or a manifest abuse of discretion. *Kapach v. Carroll*, 2015 Ark. App. 466,

SLIP OPINION

468 S.W.3d 801. Additionally, an erroneous evidentiary ruling is not grounds for reversal absent a showing of prejudice. *Id.*

### A. Workers'-Compensation Benefits

First, appellants contend that the circuit court erred by refusing to allow them to question Markley about his workers'-compensation benefits. Generally, "the collateral-source rule prohibits the admissibility of evidence showing that an injured person received payments from another source." *Wal-Mart Stores, Inc. v. Kilgore*, 85 Ark. App. 231, 239, 148 S.W.3d 754, 759 (2004). However, testimony regarding collateral sources may be introduced to rebut testimony that one was compelled by financial necessity to return to work prematurely or to forgo additional medical care or to impeach testimony that one paid his or her own medical expenses. *Id.* at 240, 148 S.W.3d at 760. "When a party testifies about his or her financial condition in a false or misleading manner, he or she opens the door for the introduction of evidence which might otherwise be inadmissible under the collateral source rule." *Babbitt v. Quik-Way Lube & Tire, Inc.*, 313 Ark. 207, 210, 853 S.W.2d 273, 275 (1993).

Appellants argue that Markley opened the door to questions about his workers'-compensation benefits. The relevant testimony occurred when Markley was asked whose idea it was for him to return to work. He replied that it was his idea to return to work because he was going to have bills to pay. Appellants claim that Markley's statement fits squarely into the exception allowing collateral-source testimony when one testifies that financial necessity required that he or she return to work.

SLIP OPINION

Markley responds by arguing that this statement was too vague for the exception to apply, and we agree. The circuit court is in the best position to judge whether testimony indicated that Markley was compelled by financial necessity to return to work prematurely and whether it was misleading. *Esry v. Carden*, 328 Ark. 153, 942 S.W.2d 846 (1997). With this standard in mind, we hold that the circuit court did not abuse its discretion by refusing to allow this questioning.

Furthermore, we hold that any error that could have stemmed from this ruling was rendered harmless by later events at trial. Based on later testimony, the circuit court issued a cautionary instruction to the jury that it was not to reduce Markley's damages based on worker's-compensation benefits received. With this instruction, any potential prejudice that resulted from Markley's testimony was cured.

### B. Joe Shrum's Deposition Testimony

Next, appellants focus their attention on whether the circuit court abused its discretion by refusing to allow the introduction of the deposition testimony of Joe Shrum, the owner and president of MCTC. Appellants filed a motion in limine seeking to introduce Shrum's deposition testimony after their attempts to subpoena him were unsuccessful. Appellants' motion in limine was brought to the attention of the circuit court and discussed, but the circuit court did not rule on the motion. Instead, the circuit court announced that it would not be inclined to grant the motion but instructed appellants to direct it to caselaw supporting their position. The issue was never addressed again, and no ruling was made. The failure to obtain a ruling from the circuit court on an issue precludes appellate review

of the issue. *Meador v. Total Compliance Consultants, Inc.*, 2013 Ark. 22, 425 S.W.3d 718. Accordingly, we summarily affirm the exclusion of Shrum's deposition testimony.

### C. Hypothetical Compliance with Safety Regulations

As a final evidentiary challenge, appellants argue that the circuit court abused its discretion by allowing testimony that, hypothetically, had Markley complied with safety regulations, his injuries would have been worse. This testimony was offered by Markley, Dr. Luke Knox, and MCTC's OSHA consultant Kim Shelton. Appellants contend that this testimony was improperly admitted because it was too speculative and prejudicial.

We begin by considering Markley's testimony. When questioned by appellants on cross-examination, Markley testified that he was glad he had not been wearing his harness because Shelton told him that wearing it could have resulted in his death or much more severe injuries. Appellants elicited the allegedly speculative and prejudicial testimony from Markley and failed to object to it when elicited. Because an appellant may not complain of an erroneous action of a circuit court on appeal if he or she has induced or acquiesced in that action, we affirm the introduction of Markley's testimony. *Riley v. State Farm Mut. Auto. Ins. Co.*, 2011 Ark. 256, at 10, 381 S.W.3d 840, 847.

Next, we turn our attention to Dr. Luke Knox's testimony. Dr. Knox testified that if Markley had worn his safety harness, Markley would have sustained a whip injury and that his death would have been likely. Dr. Knox served as an expert witness in this case, and because he was qualified as an expert, he was qualified to respond to hypothetical questions and render opinion testimony. *Garst v. Cullum*, 291 Ark. 512, 726 S.W.2d 271 (1987).

SLIP OPINION

An important consideration is whether Dr. Knox was qualified as an expert on this precise issue.  Appellants contend that, although he was an expert, he was not qualified to opine on this subject. Dr. Knox was voir dired on his qualifications to provide this type of testimony, and Dr. Knox explained that, based on his years of practice, he was an expert in the mechanics of injury.  Understanding that the circuit court has broad discretion in evidentiary matters and that the relative weakness and strength of the factual underpinning of his opinion goes to the weight and credibility rather than admissibility, we hold that the circuit court was within its discretion to allow this testimony.  *Ark. State Highway Comm'n v. Schell*, 13 Ark. App. 293, 683 S.W.2d 618 (1985).

Finally, we consider Kim Shelton's testimony.  Shelton testified that, had Markley been wearing a harness, he would have catapulted.  Markley contends that Shelton's testimony does not apply to the error alleged by appellants, and we agree.  Appellants argue that the circuit court erred by allowing testimony that Markley's injuries would have been worse if he had been wearing a safety harness, and Shelton did not offer testimony regarding the extent of his injuries. Furthermore, we acknowledge that "[e]videntiary error is harmless if the same or similar evidence is otherwise introduced at trial."  *Williams v. Sw. Bell Tel. Co.*, 319 Ark. 626, 631, 893 S.W.2d 770, 773 (1995). Any error arising out of the admission of Shelton's testimony was not prejudicial because of our holding that the circuit court did not err by admitting similar testimony through Markley and Dr. Knox.

Affirmed.

GRUBER, C.J., and GLADWIN, J., agree.

*Kutak Rock LLP*, by: *Niki Cung* and *Ashley Welch Hudson*, for appellants.

*Mason Law Firm, PLC*, by: *G. Chadd Mason*; and *Gunn Kieklak Dennis LLP*, by: *Jennifer Lloyd*, for appellee Stuart Markley.

*Munson, Rowlett, Moore and Boone, P.A.*, by: *Mark S. Breeding* and *Beverly A. Rowlett*, for appellee Madison County Telephone, Inc.