Cite as 2020 Ark. App. 208

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-19-282

| | |
|---|---|
| BARROWS/THOMPSON, LLC<br><div align="right">APPELLANT</div><br>V.<br><br>HB VEN II, LP, AND MICHAEL<br>MCAFEE, INDIVIDUALLY<br><div align="right">APPELLEES</div> | **Opinion Delivered:** April 1, 2020<br><br>APPEAL FROM THE MADISON<br>COUNTY CIRCUIT COURT<br>[NO. 44CV-18-118]<br><br>HONORABLE DOUG MARTIN,<br>JUDGE<br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Barrows/Thompson, LLC (Barrows), appeals from the Madison County Circuit Court's order dismissing its amended complaint against appellees, HB Ven II, LP (HBVII), and Michael McAfee, Individually (McAfee). On appeal, Barrows contends that (1) the circuit court erred in dismissing its amended complaint with prejudice; (2) the circuit court erred in dismissing its amended complaint for failure to state facts upon which relief can be granted; and (3) the circuit court erred in dismissing its amended complaint against McAfee for insufficiency of service. We affirm.

## I. *Relevant Facts*

Barrows owns real property located in Huntsville, Arkansas. In March 2014, Barrows leased its real property and improvements thereon to Fuel-From-Waste 2, LLC (FFW), for converting animal waste into fuel. FFW subsequently entered into a loan agreement with Heartland Bank (Heartland) and used the loan proceeds to purchase certain equipment to

be used in the conversion process. FFW granted a security interest to Heartland in the equipment, inventory, and other assets as collateral for the loan. On April 2, 2015, a UCC financing statement (Financing Statement) was filed with the Arkansas Secretary of State that evidenced the security interest.[1]

Sometime thereafter, FFW defaulted on its note and obligations to Heartland. In February 2016, Heartland and FFW resolved their disputes by entering into a consent order. Pursuant to the consent order, Heartland acquired immediate ownership and possession of the collateral secured by the Financing Statement. After Heartland acquired ownership of the FFW collateral, Heartland entered into negotiations with HBVII concerning the sale of the collateral. On August 23, 2017, Heartland and HBVII executed a "Bill of Sale and Assignment" among other instruments and agreements.[2] As part of the agreement, Heartland assigned, transferred, and conveyed its interest in "[a]ll of the equipment and personal property described in Schedule 1 attached hereto formerly owned by [FFW]" to HBVII. The list of equipment contained in Schedule 1 was similar to the list contained in the exhibit attached to the Financing Statement but also included, as is relevant to this appeal,

---

[1]The Financing Statement included the following description of collateral: all inventory, instruments, receivables, equipment, and furniture. The exhibit further listed some of the specific equipment that FFW had acquired: tanks; solids drying, conveyance, and storage; DAF system; rotary lobe pumps; tank mixing system; process control and automation system; MBBR pre-treatment aeration systems; post MBBR clarification; concentrate tank/clarifier; DAF system polymer feed system and controls; sludge dewatering system; bio-filter system/media; cannister basket strainer; jib and hoist crane; office and lab area equipment and furniture; on-site storage tanks for feedstock clients; C-100 skid mounted unit; and boiler system.

[2]The other instruments and agreements are not pertinent to this appeal.

"Tanks (Feedstock, Decant, and Oil) 15,000 gallons (heated and mixed)" and "Electrical (panels, disconnects, wire/conduit, etc.)."

After HBVII purchased its interest in the FFW collateral, HBVII entered into a month-to-month written lease agreement of the real property with Barrows. The portions of the lease agreement contain the following relevant provisions:

4.      Modifications to Property and Improvements.  Lessee shall not make any structural alterations or additions to the Property or Improvements without the express written permission of the Lessor, which consent shall not be unreasonably withheld, conditioned or delayed.  The Lessee covenants and agrees it will not commit waste nor permit waste to be done upon the Property or Improvements and, upon termination of this Agreement, *Lessee shall deliver up the Property and Improvements free and clear of debris and contamination which it has caused or allowed to occur after taking possession.*

. . . .

7.      Personal Property.  Lessor and Lessee agree that the Lessee's Equipment is and will remain personal property.

. . . .

12.     Entire Agreement.  This Agreement contains the entire agreement of the parties, and no modifications thereof or statements or representations in connection herewith shall be effective or binding on either party unless the same is reduced to writing, signed by Lessor and Lessee, and attached hereto.

(Emphasis added.)

By early 2018, it was apparent that HBVII intended to terminate its month-to-month lease with Barrows.  HBVII began removing certain pieces of equipment from the leased property and selling that equipment to third parties.  Emails between Michael McAfee, on behalf of HBVII, and Keith Morrison, on behalf of Barrows, discussed some of the equipment that was removed and sold.  Of particular importance to this appeal, one of the leased buildings on Barrows's property contained three-phase electrical service and related

3

equipment and panels. This three-phase equipment was installed by FFW while it was operating the conversion facility. HBVII advised Barrows in these emails that it intended to remove the three-phase equipment and panels. HBVII further advised Barrows that Barrows would need to replace the three-phase service and equipment with one-phase service and equipment in order to make the property tenable. The specific emails between HBVII and Barrows are discussed in more detail below.

When HBVII vacated the leased property, it left behind approximately 15,000 gallons of animal-waste sludge in holding tanks, and it removed the three-phase equipment and panels.[3] Barrows subsequently filed a complaint against HBVII generally alleging breach of the lease agreement. On September 26, 2018, Barrows filed its amended complaint superseding its previous complaint and named defendants HBVII; Michael McAfee, Individually; Simmons Bank, in its capacity as trustee of the Heartland Bank liquidating trust U/I/D March 8, 2018; and John/Jane Doe.[4] Relevant to this appeal, Barrows alleged that its lease with HBVII expired on April 1, 2018. Barrows further alleged that prior to the expiration of the lease, McAfee indicated in an email that HBVII would remove some of the personal property HBVII obtained through the bill of sale but would leave certain items that made the warehouse usable, including the three-phase converter and electrical panels. Barrows alleged that HBVII did in fact remove the three-phase panel and left inventory materials (animal-waste sludge) in the underground holding tanks. Barrows alleged the

_____

[3]There were other issues arising out of the termination of the lease agreement that are not pertinent to this appeal.

[4]Simmons Bank and John/Jane Doe are not parties to this appeal. See footnote 5.

4

animal-waste sludge left in the tanks rendered the leased property unrentable because a significant portion of the sludge was a biological hazard. It further alleged that the leased property was left in an unrentable condition due to its lack of electrical service.

More specifically in its amended complaint, Barrows alleged four claims for relief against HBVII and McAfee: (1) breach of contract, (2) promissory estoppel, (3) deceit, and (4) trespass. Regarding breach of contract, Barrows alleged that HBVII had agreed "to not commit waste nor permit waste" and to return the real property "free and clear of debris and contamination which it had caused or allowed to occur after taking possession." Barrows alleged that HBVII breached the above provisions in the lease agreement when it failed to remove all of its property, "including but not limited to, Tanks (Feedstock, Decant, and Oil) 15,000 gallons (heated and mixed); Centrate tank/clarifier; . . . [and] caused debris and contamination to be left at the Subject Real Property." Moreover, Barrows claimed that it suffered damages, including damage to real property and loss of rent. Further, Barrows claimed that the circuit court should disregard the corporate form and hold McAfee personally liable in his individual capacity.

Regarding its claim for promissory estoppel, Barrows alleged that it relied on promises made by HBVII and McAfee that the real property would be left in a usable condition. Barrows further alleged that it had suffered a "significant detriment" because it must replace the three-phase converter panel and have the sludge in the holding tanks removed before being able to return the property to a usable condition.

Regarding its claim for deceit, Barrows alleged that HBVII and McAfee falsely represented that the leased property would be left usable. Barrows alleged that HBVII and

5

McAfee knew their representations that the three-phase electrical panel would be left were false and that HBVII and McAfee knew there was an obligation to remove the sludge in the holding tanks.

Finally, regarding its claim for trespass, Barrows alleged that the animal-waste sludge left in the holding tanks constituted a trespass. Barrows attached numerous documents to its amended complaint, including written instruments, affidavits, copies of emails, and quotes to repair the electrical service and remove the materials in the tanks.

HBVII and McAfee filed a motion to dismiss the amended complaint and incorporated brief in support. They argued that the amended complaint should be dismissed with prejudice for failure to state facts upon which relief can be granted pursuant to Arkansas Rule of Civil Procedure 12(b)(6) (2019) and because the amended complaint "fails under longstanding principles of landlord-tenant law." McAfee additionally alleged that he should be dismissed from the action because Barrows had failed to serve him within 120 days of the original filed complaint pursuant to Arkansas Rule of Civil Procedure 4(i) and Arkansas Rule of Civil Procedure 12 (b)(2), (4)−(5). HBVII and McAfee attached a copy of the 2014 lease agreement between Barrows and FFW. Notably, the lease contained the following provisions:

> 11.    <u>Personal Property</u>. Lessor and Lessee agree that the Lessee's Equipment is and will remain personal property. Lessee's Equipment will not be deemed to be affixed to or a part of the Property or Improvements on which it may be situated, notwithstanding that the Lessee's Equipment or any part thereof may be or hereafter become in any manner physically affixed or attached to the Property or Improvements or permanently rests upon the Property or Improvements. Lessor acknowledges that Lessee's Lender has a first priority security interest in and to Lessee's Equipment and that Lessor will not file any fixture or other UCC filings naming the Lessee's Equipment, or any other

6

personal property located at the Property, other than the Original Equipment, as defined in Paragraph 13 below, as collateral.

. . . .

If the mechanical systems of the Improvements are determined to be inadequate for Lessee's purposes, Lessee may, at its own expense, have such required additional plumbing and electrical wiring installed with the advanced written permission of the Lessor which shall not be unreasonably withheld.

All Lessee's Equipment installed by Lessee or acquired by Lessee independently of this Agreement shall remain Lessee's property and may be removed by Lessee at the expiration of the agreement; provided, however, Lessee shall restore the Property and repair any damage caused by the removal.

Barrows filed its response to the motion to dismiss and incorporated brief in support. It argued that the amended complaint should not be dismissed for failure to state facts upon which relief can be granted. It further argued that McAfee was properly served and should not be dismissed. After HBVII and McAfee filed a reply on November 6, 2018, a hearing on the motion to dismiss was held on December 10, 2018.

The parties made the following arguments regarding each individual claim pleaded in the amended complaint. First, HBVII and McAfee argued that Barrows's amended complaint for breach of contract failed because the lease agreement specifically did not require HBVII to remove personal property that was placed on the real property before HBVII took possession of the premises. HBVII and McAfee argued that the animal-waste sludge in the holding tanks was produced by FFW when FFW was in possession of the leased property. Since the sludge was already in the holding tanks and on the leased property when HBVII entered into the lease agreement with Barrows, HBVII did not have any responsibility to remove the sludge at the termination of its lease agreement with Barrows.

7

HBVII and McAfee relied on paragraph 4 of its lease agreement with Barrows, which provides in pertinent part that "upon termination of this Agreement, Lessee shall deliver up the Property and Improvements free and clear of debris and contamination *which it has caused or allowed to occur after taking possession*." (Emphasis added.) HBVII and McAfee concluded that HBVII did not cause or allow the sludge to occur after taking possession of the leased property. Barrows responded that when HBVII purchased the personal property from Heartland, HBVII purchased the existing animal–waste sludge that was in the holding tanks. Barrows reasoned that because the sludge was HBVII's personal property, HBVII had the contractual obligation to return the real property free and clear of its personal property. Barrows additionally argued that because the sludge was personal property and not a fixture, the continued existence of the personal property on the leased property supported a breach of contract on the basis of waste.

Second, HBVII and McAfee argued that the existence of the lease agreement barred any promissory-estoppel claim and that a claim for promissory estoppel could not be used to transplant a new promise of a "usable condition" into the express written contract. Moreover, HBVII and McAfee argued that Barrows's amended complaint failed to plead the necessary facts to support the elements of promissory estoppel. Barrows responded that its promissory-estoppel claim was based on statements McAfee made in a February 27, 2018, email near the termination of the lease agreement wherein he stated that "[w]e are planning on leaving items that will make the warehouse usable for the landlord regardless of the purchase from the bank." Barrows explained that this promise was made months after the lease agreement was entered into and was, therefore, independent of the promises set forth

8

in the parties' lease agreement. Barrows further argued that it would simply "be unjust to allow the Defendants to promise the Plaintiff a usable building, but in reality, allow the Defendants to return the Plaintiff a building which allows the Defendants' free storage of its personal property which in turn renders the Subject Real Property unusable, despite the specific promise of the Defendants to the contrary."

Third, HBVII and McAfee argued that Barrows failed to plead the necessary facts to support the elements of a deceit or fraud claim. They explained that McAfee's statements on behalf of HBVII in the February 27, 2018, email were not false representations of a material fact but rather were projections of future conduct which cannot support a fraud claim. Moreover, HBVII and McAfee argued that Barrows failed to state any particular facts to show justifiable reliance, intent to induce reliance, or damage suffered as a result of Barrows's reliance. Barrows countered that it properly pleaded a cause of action for fraud. It argued that HBVII and McAfee admitted that McAfee stated in an email that the warehouse would be left usable for the landlord and that the three-phase panel would remain. Barrows also argued that when HBVII and McAfee stated that they did not have an obligation to remove the sludge in the storage tanks, those statements were false representations of material fact. Barrows alleged that HBVII had purchased Heartland's entire security interest and knew it was responsible for the personal property. It further alleged the following:

> HB VEN intended to induce the plaintiff into inaction by providing documents that covered up the fact regarding its ownership or purchase of Fuel-From-Waste 2's assets. This intent to induce inaction has left the defendant − or the plaintiff in a position to where months after the expiration of the lease, they have not been able to re-let the premises, and they're still suffering damages due to its inability to re-let the building. In regard to the damages in association with fraud and promissory

9

estoppel, the plaintiff is right now not able to rent the building, and his credit – and on a monthly basis, I believe that's pled, it's over $8000.00 a month.

Fourth, HBVII and McAfee initially argued that Barrows's claim for trespass failed because Barrows had failed to allege that HBVII owned or caused the sludge to be put in the storage tanks and that they could not be held liable for intrusions that occurred before or during a lease term. Further, HBVII and McAfee argued that because there was no intrusion by HBVII or McAfee, the intrusion element required for a trespass claim could not be met. Barrows responded that HBVII and McAfee's argument is flawed because it is alleging that the trespass had occurred due to the personal property being left after the expiration of the lease. Therefore, Barrows argued that it was being damaged on a daily basis because HBVII and McAfee had failed to remove all personal property after the expiration of the lease.

Finally, McAfee, individually, argued that because he had not been served with the amended complaint within 120 days from the date the original complaint was filed, he must be dismissed from the action. Barrows disagreed.

At the conclusion of the hearing, the circuit court orally stated it was "going to grant [HBVII] and Michael McAfee's motions in full. . . . I believe I'm actually going to grant [HBVII] and Mr. McAfee's Motions to Dismiss with Prejudice. These claims are not allowed." The circuit court subsequently filed an order on December 14, 2018, making the following relevant findings:

> On December 10, 2018, came on to be heard Separate Defendants HB Ven II LP and Michael McAfee's ("Separate Defendants") Motion to Dismiss. Having considered their motion and Plaintiff's response thereto, the applicable law, and the arguments of counsel, the Court hereby finds and orders as follows:

1. On October 16, 2018 Separate Defendants filed their Motion to Dismiss Amended Complaint Against HB Ven II LP and Michael McAfee.

2. Pursuant to the pleadings in this matter, the arguments of counsel, and for the reasons stated from the bench, the Separate Defendants' Motion to Dismiss is hereby GRANTED and the Amended Complaint is dismissed with prejudice as to HB Ven II LP and Michael McAfee.

This appeal followed.[5]

## II. *Standard of Review*

As a preliminary matter, while the parties treat this as an appeal from an order granting a motion to dismiss pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure, the proper standard of review of the circuit court's order is that of a motion for summary judgment. Rule 12(b)(8) states,

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Barrows attached to its amended complaint several exhibits, including not only written instruments pursuant to Arkansas Rule of Civil Procedure 10 but also affidavits, copies of emails, and other supporting documents, which the circuit court considered when it dismissed Barrows' amended complaint with prejudice. Therefore, because the circuit court

---

[5]In a separate order filed on December 12, 2018, the circuit court additionally dismissed Barrows' amended complaint against Simmons Bank, and all claims against the unserved John/Jane Doe defendant were automatically dismissed by the circuit court's final judgment pursuant to Rule 54(b)(5) of the Arkansas Rules of Civil Procedure. Therefore, the order appealed from is a final order. *See McCoy v. Robertson*, 2018 Ark. App. 279, at 2 n.1, 550 S.W.3d 33, 35 n.1; *Williams v. Stant USA Corp.*, 2015 Ark. App. 180, at 2, n.3, 458 S.W.3d 755, 757 n.3.

11

considered matters outside the pleadings, the motion to dismiss was converted to a motion for summary judgment. *Morgan v. Turner*, 2010 Ark. 245, 368 S.W.3d 888; *Koch v. Adams*, 2010 Ark. 131, 361 S.W.3d 817; *Short v. Westark Cmty. Coll.*, 347 Ark. 497, 502, 65 S.W.3d 440, 443 (2002); *Graham v. French*, 2015 Ark. App. 29, 454 S.W.3d 246.

Our summary-judgment standard is well settled. Summary judgment may be granted only when there are no genuine issues of material fact to be litigated. *Greenlee v. J.B. Hunt Transp. Servs.*, 2009 Ark. 506, 342 S.W.3d 274. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *McGrew v. Farm Bureau Mut. Ins. Co. of Ark.*, 371 Ark. 567, 268 S.W.3d 890. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Greenlee*, *supra*. On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id*. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*. Our review focuses not only on the pleadings but also on the affidavits and other documents filed by the parties. *Id*. As to issues of law presented, our review is de novo. *State v. Cassell*, 2013 Ark. 221, 427 S.W.3d 663.

We note that Barrows mistakenly argues throughout its brief that the circuit court erred in relying on documents outside the pleadings and deciding that its amended complaint should be dismissed under a summary-judgment standard. However, as we already stated, the motion to dismiss was converted to a motion for summary judgment

12

when the circuit court considered matters outside the pleadings. We additionally note that Barrows did not specifically object or argue that the circuit court should have limited its review to only the four corners of the amended complaint as it now alleges on appeal. In fact, the parties each referenced many of the attached documents filed throughout this case in support of their arguments at the hearing on the motion to dismiss. An appellant may not complain of an erroneous action of a circuit court on appeal if it has induced or acquiesced in that action. *R&L Carriers Shared Servs., LLC v. Markley*, 2017 Ark. App. 240, 520 S.W.3d 268. Remaining mindful of our standard of review, we now review whether the circuit court properly dismissed Barrows's amended complaint.[6]

### III. *Dismissal of Amended Complaint Against McAfee*

Barrows pleaded in its amended complaint that the circuit court should disregard the corporate entity of HBVII and hold McAfee personally liable for any liability imposed against HBVII. The circuit court dismissed the amended complaint as it pertained to McAfee individually. Barrows argues on appeal that the circuit court erred in doing so; however, Barrows' arguments lack merit.

In the amended complaint, Barrows alleged that McAfee signed the bill of sale, an affidavit, and the Barrows/HBVII lease agreement all as the general partner for HBVII. Further, the corporate records at the Arkansas Secretary of State also note that McAfee was the general partner of HBVII. Barrows contends that because McAfee communicated with Barrows using the email address michael@mkmcafee.com, McAfee was the alter ego of

---

[6]We address Barrows's points on appeal in a different order than was presented to us in the brief on appeal.

HBVII. We disagree. The record is clear that McAfee was acting as general partner for HBVII in all of his activity and conduct with Barrows. Therefore, all causes of action against McAfee, individually, were properly dismissed.

IV. *Dismissal of Amended Complaint Against HBVII*

Barrows next argues on appeal that the circuit court erred in dismissing its amended complaint against HBVII. We disagree and separately address each individual claim alleged in Barrows's amended complaint.

A. Breach of Contract

To succeed on a breach-of-contract claim, the plaintiff must show (1) the existence of a contract, (2) an obligation on the part of the defendant under the contract, (3) a failure to perform the obligation, and (4) resulting damages. *Farris v. Conger*, 2017 Ark. 83, 512 S.W.3d 631; *GM Enters., LLC v. HCH Toyota, LLC*, 2018 Ark. App. 607, 567 S.W.3d 878. On appeal, Barrows alleges that it sufficiently pleaded its breach-of-contract claim and that the circuit court should not have considered whether Barrows could prevail on its breach-of-contract claim during its consideration of a motion to dismiss pursuant to Rule 12(b)(6). Moreover, it alleges that HBVII's argument that Barrows's breach-of-contract claim fails as a matter of law "presupposes there are no issues to be resolved regarding the scope of Appellees' duties under the contract." Barrows's arguments, however, lack merit.

It is undisputed that the parties entered into a lease agreement. HBVII correctly argues that Barrows cannot identify any provision under the lease agreement that obligated HBVII to remove the holding tanks or sludge contained therein. In summary-judgment cases involving the interpretation of a contract, if provisions of the contract are unambiguous,

14

their construction is an issue of law for the circuit court. *GM Enters., supra.* Barrows mistakenly relies on paragraph 4 to show that HBVII had breached the lease agreement. However, paragraph 4 specifically states in pertinent part that "The Lessee [HBVII] covenants and agrees it will not commit waste nor permit waste to be done upon the Property or Improvements and, upon termination of this Agreement, Lessee [HBVII] shall deliver up the Property and Improvements free and clear of debris and contamination *which it has caused or allowed to occur after taking possession*." (Emphasis added.) Perhaps a refreshment of the history of the animal-waste sludge is helpful. The sludge was produced by FFW, the previous tenant of Barrows. The sludge would have been inventory of FFW. Heartland acquired FFW's equipment and inventory by consent order and subsequently sold the equipment and inventory to HBVII. The animal-waste sludge was already located on the leased property when HBVII leased the property from Barrows. There is no evidence in the record that HBVII produced any animal-waste sludge, nor did it cause or allow any animal-waste sludge to be located on the leased property after it obtained possession. Further, there is no evidence that it committed or permitted waste on the leased property. As such, summary judgment was appropriate, and the circuit court properly dismissed Barrows's breach-of-contract claim.

### B. Promissory Estoppel

To prove promissory estoppel, a plaintiff must show that (1) the defendant made a promise; (2) the defendant should have reasonably expected the plaintiff to act or refrain from acting in reliance on the promise; (3) the plaintiff acted or refrained from acting in reasonable reliance on the promise to its detriment; and (4) injustice can be avoided only by

15

enforcement of the promise. *Fairpark, LLC v. Healthcare Essentials*, 2011 Ark. App. 146, 381 S.W.3d 852. Barrows argues that it alleged in its amended complaint that HBVII promised that the real property would be left in a "usable condition." It further argues that the property was left unusable because HBVII left the sludge in the tanks and removed the three-phase converter panel. However, our law is well settled that promissory estoppel may be a basis for recovery only when formal contractual elements do not exist. *Taylor v. George*, 92 Ark. App. 264, 212 S.W.3d 17 (2005). In this case, Barrows had a contract with HBVII and furthermore, paragraph 12 states that the lease agreement constituted the entire agreement and that no other modifications or representations were permitted unless they were reduced to writing and signed by both parties. Promissory estoppel is not to be used as a vehicle to engraft a promise on a contract that differs from the written terms of the contract. *Wilcox v. Wooley*, 2015 Ark. App. 56, 454 S.W.3d 792. Therefore, the circuit court did not error in dismissing the claim for promissory estoppel against HBVII.

## C. Deceit

Turning to Barrows's claim for deceit, this tort, also known as fraud or misrepresentation, consists of five elements that must be proved by a preponderance of the evidence: (1) a false representation, usually of a material fact; (2) knowledge or belief by the defendant that the representation is false; (3) intent to induce reliance on the part of the plaintiff; (4) justifiable reliance by the plaintiff; and (5) resulting damage to the plaintiff. *Allen v. Allison*, 356 Ark. 403, 155 S.W.3d 682 (2004); *Goforth v. Smith*, 338 Ark. 65, 991 S.W.2d 579 (1999); *Calandro v. Parkerson*, 327 Ark. 131, 936 S.W.2d 755 (1997). An action for fraud or deceit may not be predicated on representations relating solely to future events. *Goforth*,

16

*supra*. However, this rule is inapplicable if the person making the representation or prediction knows it to be false at the time it is made. *Id.*

The basis for Barrows's deceit claim was a February 2018 email in which McAfee stated that HBVII anticipated "leaving items that will make the warehouse usable for the landlord regardless of the purchase from the bank . . . such as the three phase converter and certain electrical panels that prov[ided] service to the overhead lights and door motors" and an alleged oral statement that "there was no obligation that the materials within the holding tanks needed to be removed from the Subject Real Property." HBVII argued in its motion to dismiss that Barrows's claim should be dismissed because the representations cited by Barrows were promises of future events rather than statements of fact and likened the facts of this case to those in *Hobson v. Entergy Arkansas, Inc.*, 2014 Ark. App. 101, 432 S.W.3d 117. We agree with HBVII.

In *Hobson*, George Hobson was a former employee of Entergy who owned and operated an electrical-contracting company. Hobson was approached by Entergy with an offer to return to work for the company. Hobson accepted Entergy's offer, which entailed relocating from Rogers to Little Rock, but later resigned his position on the ground that Entergy had breached a promise to purchase Hobson's home and fraudulently induced him to accept the job offer. Entergy moved for summary judgment on Hobson's fraud claim, and the circuit court granted summary judgment. We affirmed. *Id.* In doing so, we stated that it is well established that representations that are promissory in nature, or of facts that will exist in the future, though false, will not support an action for fraud. *Id.* Broken promises are therefore generally within the realm of breach–of–contract actions, and not fraud actions.

17

*Id.* Moreover, we held that even though there is an exception to the "future-events rule," Hobson produced no evidence that would permit an inference that Entergy lacked an honest belief about the promises made to Hobson. *Id.* Thus, because there was no genuine issue of material fact, the general rule that promises of future conduct do not constitute fraud is not abrogated. *Id.*

The same is true here. McAfee's alleged representations on behalf of HBVII regarding leaving certain items on the leased property fall within the future-events rule. Additionally, regarding McAfee's alleged representations that HBVII was under no obligation to remove the sludge, Barrows cannot show that the statement was a false representation. The lease agreement did not specifically obligate HBVII to remove the sludge from the underground storage tanks. Further, as in *Hobson*, Barrows produced no evidence that would permit an inference that McAfee lacked an honest belief about the alleged promises made to Barrows. As such, summary judgment was appropriate, and we affirm the circuit court's dismissal of this claim.

### D. Trespass

Next, Barrows argues on appeal that dismissal of its trespass claim was inappropriate because it alleged a valid claim in its amended complaint. Barrows more specifically argues that "[a]ppellees committed trespass because they failed to remove animal waste from the property at issue, which was contained in holding tanks owned by [HBVII], and allowed it to remain." Although Barrows quotes the Restatement (Second) of Torts, Barrows has failed to cite any authority in which a court has upheld a claim for trespass under similar allegations. Section 158 defines the scope of liability in trespass claims for intentional intrusions on land:

18

One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally,

> (a) enters land in the possession of another, or causes a thing or a third person to do so, or

> (b) remains on the land, or

> (c) *fails to remove from the land a thing which he is under a duty to remove.*

Restatement (Second) of Torts, § 158 (1975) (emphasis added). Here, despite Barrows's assertions to the contrary, as we previously explained, the lease agreement did not obligate HBVII to remove the sludge in the holding tanks, and Barrows does not cite any other authority that would impose such a duty. As such, we affirm the circuit court's dismissal of this claim.

## V. *Dismissal with Prejudice*

Barrows argues that the circuit court erred in dismissing its amended complaint with prejudice instead of without prejudice. In *West v. Searle & Co.*, our supreme court explained the difference between failing to state a cause of action and failing to have a cause of action:

> [S]ummary judgment based upon a failure to state a claim upon which relief can be granted is different from a summary judgment based upon a lack of disputed material facts, which results in a party's entitlement to the judgment as a matter of law. The first is the failure to *state* a claim, the second is the failure to *have* a claim. When summary judgment is granted upon failure to *have* a claim, and the ruling is affirmed on that basis, the matter is ended with prejudice. However, when summary judgment is granted in the trial court because of failure to *have* a claim, but is affirmed on the basis of failure to *state* a claim, we modify to make the dismissal without prejudice in order to afford the plaintiff-appellant a chance to plead further.

305 Ark. 33, 36, 806 S.W.2d 608, 610 (1991) (citations omitted and emphasis in original); Ark. R. Civ. P. 12(j); *see also Schultz v. Butterball, LLC*, 2012 Ark. 163, at 12, 402 S.W.3d 61, 68.

19

Here, the action was dismissed not because Barrows failed to *state* a claim; rather, it was dismissed because Barrows did not *have* a claim against HBVII or McAfee. There are no facts that Barrows pleaded to entitle it to the requested relief. As we explained above, the record is clear that McAfee acted only in his representative capacity of HBVII and cannot be held personally liable. Further, because HBVII did not have a contractual obligation to remove the animal-waste sludge from the leased property under the terms of the lease, HBVII did not breach the terms of the lease agreement. Additionally, promissory estoppel is an inappropriate basis for recovery when a formal contract was in place. Further, Barrows cannot not prove its deceit claim because HBVII's alleged representations regarding leaving certain items fall within the future-events rule and because Barrows cannot show that HBVII's alleged representation that it was under no obligation to remove the animal waste sludge was a false representation. Finally, Barrows's trespass claim fails because the lease agreement simply did not obligate HBVII to remove the animal-waste sludge in the holding tanks. Hence, Barrows did not *have* a claim against either HBVII or McAfee, and dismissal with prejudice was the appropriate disposition of this matter.

## VI. *Service on McAfee*

Barrows finally argues that the circuit court erred in dismissing its amended complaint against McAfee for insufficient service. However, because we affirm the circuit court's dismissal of Barrows's amended complaint against McAfee for the reasons above, we need

20

not consider the circuit court's ruling regarding McAfee's alternative argument for dismissal based on improper service.

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*Putnam Law Office*, by: *William B. Putman*, for appellant.

*Kutak Rock LLP*, by: *Andrew King* and *Kyle T. Unser*, for appellees.